(70 App. Div. 416.)

### PEOPLE ex rel. SACKETT v. WOODBURY, Surrogate.

(Supreme Court, Appellate Division, Fourth Department. March 11, 1902.)

**1. JUDGMENTS—SURROGATE'S COURT—EXECUTION—MANDAMUS.**

Code Civ. Proc. §§ 2550, 2553, 2554, provide that a decree of the surrogate directing the payment "of money into court or to one or more persons designated" may be docketed in the clerk's docket book as prescribed by law for docketing a judgment of the supreme court, and the docketing will have the same effect as if it was such judgment. It is further declared that execution thereon can be issued only by the surrogate, or the clerk of his court, but in all other respects the provisions of this act relating to executions against the property of a judgment debtor, issued on judgments of the supreme court, shall apply. *Held*, that a decree finally settling an administrator's account, and directing him to pay a certain sum to a distributee, or to the surrogate's court, being within the cognizance of that court, and a final determination of the rights of the parties, was within the statute, and was governed by section 1377, requiring that, after the lapse of five years from the entry of a judgment, notice of an application for execution thereon must be served on the adverse party, and therefore mandamus would not lie to compel the surrogate to issue execution thereon before the service of such notice.

**2. SAME—LIMITATIONS—DOCKETING JUDGMENT.**

The docketing of the judgment with the county clerk did not establish a new date for the starting of the five-year limitation on the issuing of an execution.

3. SAME—DISCRETION.
As the records of the surrogate's court showed that the administrator had endeavored to comply with the decree, and had paid the money to the surrogate, who signed it, the surrogate, in insisting that the administrator have notice of the application for execution, was acting within his inherent discretion, irrespective of any statutory authority, and mandamus would not lie to compel the issuing of the execution.

4. SAME—QUALIFIED REFUSAL TO ACT.
Where a surrogate did not unqualifiedly refuse to issue execution on a judgment of his court, but advised that the adverse party be given notice of the application, and the applicant apparently acquiesced in the suggestion, mandamus would not lie to compel the issuing of such execution, as the writ implies an improper refusal.

5. SAME—JUDICIAL ACTION.
A surrogate acts judicially in requiring that an adverse party be given notice of an application for execution, and the action of the surrogate cannot be reviewed by mandamus.

Appeal from special term.

Mandamus by the people, on the relation of Judson Sackett, against Egburt E. Woodbury, surrogate of Chautauqua county, to compel defendant to issue an execution on a decree entered in his court. From an order denying the writ, plaintiff appeals. Affirmed.

Argued before McLENNAN, SPRING, WILLIAMS, HISCOCK, and DAVY, JJ.

Thomas H. Larkin, for appellant.

Frank W. Stevens, for respondent.

SPRING, J. On the 30th day of June, 1894, in proceedings for the judicial settlement of the account of Van Buren Sackett as administrator of the goods, etc., of Jacyntha Sackett, deceased, a decree was entered in the surrogate's court of Chautauqua county finally settling his account, and directing that said administrator pay to the relator, Judson Sackett, $498.60,—his distributive share as one of the next of kin of said deceased. Said decree further ordered that, in case said payment could not be made to said Judson Sackett, the same be paid into the surrogate's court of said county. In 1899 proofs were presented to the said surrogate's court sufficient to raise the presumption of the death of said Judson Sackett, and an administratrix of his personal estate was appointed, who continued to act in that capacity until May 6, 1901, when the letters of administration were revoked, as the alleged decedent was ascertained to be alive; and the revocation of the letters was at his instance, as well as that of the administratrix. During the incumbency of said administratrix, proceedings were commenced on her behalf to enforce the decree of June, 1894, by requiring the respondent to pay over to her the sum adjudged as the distributive portion of the relator. The respondent answered, alleging that he had paid such sum to a former surrogate of said county, but the proceeding was dismissed without determining as to the validity of this payment. On the 16th day of April, 1901, a transcript of said decree was docketed in the clerk's office of said county; and, as a proceeding was to be commenced for the enforcement of the decree directing the payment to the relator, the surrogate wrote to his attorney, advising him, among other things, of the propriety of giving notice of the proceeding

to the respondent, in conformity with sections 1377 and 1378 of the Code of Civil Procedure. A citation was subsequently issued to the administrator, requiring him to show cause why an execution should not issue upon the decree entered in the surrogate's court. The proceeding was dismissed on the ground that the petition was insufficient, but without prejudice to the renewal of the application. The attorney for the relator thereafter presented the papers used upon this application for the writ of mandamus, and the surrogate questioned their sufficiency, and advised the issuing of a citation to the administrator, as that officer desired to test the validity of the payment to the former surrogate, and the fact of such payment was obvious by the records in the surrogate's office. The attorney thereupon asked leave (which was granted) to withdraw his papers, informing the surrogate he would examine the practice regulating applications of this kind. Subsequently, without any further application or request to the surrogate, this proceeding for a peremptory writ requiring the surrogate to issue an execution was commenced. We think there are several cogent reasons for affirming the order of the special term denying the writ:

1. The judicial settlement of the account of the respondent as administrator was clearly within the cognizance of the surrogate's court, and its decree was "the final determination of the rights of the parties." Code Civ. Proc. § 2550. That decree was conclusive upon their rights, and possessed the same force and verity as the judgment of any court of competent jurisdiction. Baldwin v. Smith, 91 Hun, 230, 36 N. Y. Supp. 159; Garlock v. Vandevort, 128 N. Y. 374, 28 N. E. 599; O'Connor v. Huggins, 113 N. Y. 511, 21 N. E. 184. By section 2553 of the Code of Civil Procedure, a transcript of the decree directing the payment "of money into court or to one or more persons therein designated" may be docketed in the clerk's docket book, "kept in his office as prescribed by law for docketing a judgment of the supreme court. The docketing of such a decree has the same force and effect * * * as if it was such a judgment." It still remains, however, a decree of the surrogate's court (Townsend v. Whitney, 75 N. Y. 425), and the surrogate, or his clerk, alone, has power to enforce the decree by issuing an execution (Code, § 2554), or, in a proper case, by punishing the party refusing to obey it, for a contempt (Id. § 2555). In these various proceedings and remedies the surrogate, or his court, still retains exclusive jurisdiction over the subject-matter of the decree, and the docketing in no way impairs this authority, or transmits it to any other court. The object of docketing the decree is to create a lien upon the property of the party charged with the payment of the money, not to change the character of the decree, or to devest the surrogate of jurisdiction. In enforcing the decree, section 2554 of the Code, however, after providing that execution can be issued only by the surrogate, or the clerk of his court, adds:

"In all other respects the provisions of this act, relating to an execution against the property of a judgment debtor, issued upon a judgment of the supreme court, and the proceedings to collect it, apply to an execution issued from the surrogate's court, and the collection thereof, the decree, being for that purpose, regarded as a judgment."

The mode of procedure, therefore, covering the issuing of an execution on a judgment of the supreme court, is applicable to one issued to enforce the decree of the surrogate's court directing the payment of a sum of money. Section 1377 of the Code permits an execution on a final judgment "after the lapse of five years from its entry * * * where an order is made by the court granting leave to issue the execution." By the following section, notice of this application "must be served personally upon the adverse party if he is a resident of the state." The docketing of the decree did not make a new date for the starting of the five-year limitation upon the issuing of an execution without leave of the court. The period from which the five years commences to run is the entry of the final judgment, which in this case was the entry of the decree, and there was no merger of the decree into a judgment by its docketing. The decree itself was not even entered in the clerk's office, but a transcript attested by the surrogate, or the clerk of his court, furnished the data from which it could be docketed. We are therefore satisfied that the surrogate was within the strict line of his official duty in urging upon the attorney for the relator the necessity of complying with the requirements of these sections. There is no reason which occurs to us why these provisions are not applicable to the enforcement of the decree of the surrogate's court, and the obvious intention of the legislature has been to conform the practice of that court, as far as possible, to that which obtains in other courts of record.

2. In the present case the surrogate very properly insisted that the administrator should have notice of the application to issue an execution. The records of his court relating to the settlement of this estate showed that the administrator had endeavored to comply with its requirements, and had paid the money to the surrogate, who signed the decree. It was contended in his behalf that the payment was a satisfaction of the decree so far as it affected the appellant, and, whether right or wrong in this contention, he ought to be given an opportunity to have its validity determined before any execution was issued. Irrespective of any statutory authority, the surrogate was acting within his inherent power, which necessarily vested him with some discretion, in insisting that the administrator be given notice that the relator desired to enforce the decree by execution. The requirement that he notify the administrator was not burdensome, could readily be complied with, and was in every way reasonable.

3. But the surrogate did not unqualifiedly require that notice be given to the respondent of the application for leave to issue the execution. He advised this, and apparently the attorney for the relator acquiesced in the suggestion of the surrogate. The writ peremptorily requiring the surrogate to issue the execution, and which of itself implies an improper refusal by the surrogate, may not be granted until the declination of the official to act is clear and unmistakable.

4. We apprehend, however, that the remedy by peremptory writ of mandamus is not the proper manner in which to review the conduct of the surrogate, even if tantamount to a refusal to issue the execution without notice to the administrator. Conceding the application for execution was made unequivocally, the surrogate was called upon to

act judicially, which he did. While not denying the right of the relator ultimately to have the execution issued, the surrogate, in the exercise of his discretion, required, as a preliminary step, that the administrator be called in to be heard. This judicious course of the surrogate cannot be reviewed by mandamus. People v. Court of Sessions of Monroe Co., 141 N. Y. 288, 36 N. E. 386, 23 L. R. A. 856; People v. Campbell, 72 N. Y. 496; People v. Rosendale, 76 Hun, 103, 27 N. Y. Supp. 837. The remedy savors too much of an attempt to coerce a public official, who was obviously endeavoring to perform his whole duty to both parties interested. If there had been in fact a refusal to issue the execution without notice, an order denying the application might have been entered, and a review had by appeal. For these reasons, we conclude that the order should be affirmed, with $10 costs, and the disbursements of this appeal.

Order affirmed with $10 costs, and the disbursements of this appeal. All concur.

