In the Matter of the Estate of JOHN TOWNSHEND, Deceased.

Surrogate's Court, New York County, June 14, 1935.

*Herman Goldman* [*Benjamin Wiener* and *Harry G. Liese* of counsel], for the petitioner.

*Morrison & Lynn* [*Archie B. Morrison* and *Charles Roden* of counsel], for Charles H. Friedrich, receiver, and another.

DELEHANTY, S.   Section 83 of the Surrogate's Court Act provides that any decree of this court which directs payment of a sum of money may be enforced by an execution against the property of the person directed to make the payment.   After providing that the execution must be issued by the surrogate or the clerk of the court and must be made returnable to the court, the section says: " In all other respects the provisions of law relating to an execution against the property of a judgment debtor issued upon a judgment of the supreme court, and the proceedings to collect it, apply to an execution issued from the surrogate's court, and the collection thereof, the decree being, for that purpose, regarded as a judgment."

Section 652 of the Civil Practice Act provides that no execution may be issued on a judgment after five years have elapsed since its entry unless within that period a prior execution has been returned wholly or partly unsatisfied or unless the issuance of an execution is permitted by an order of the court.   Section 653 of the Civil Practice Act regulates the manner in which such leave to issue execution may be sought.   Notice of the application for leave must be served personally upon the judgment debtor unless otherwise directed by the court.   The section then provides: " Where the judgment is for a sum of money or directs the payment of a sum of money, leave shall not be granted except on proof, by affidavit, to the satisfaction of the court, that the judgment remains wholly or partly unsatisfied."

An unusual state of facts is disclosed in the application here made to vacate an execution heretofore issued by the clerk of this court without any prior order of the court.   Deceased named a daughter by a first marriage as one of two executrices.   He named his second wife as the other.   In May, 1914, the daughter filed a separate account and a petition for its settlement.   The widow made a claim against the estate which was rejected.   She filed objections to the account.   The issues were referred and on July 27, 1915, the referee filed his report in this court.   It was confirmed twelve years later on the 17th day of June, 1927.   A decree settling the account was entered on February 27, 1928.   It directed payment by the accounting executrix of the principal sum of $39,731.75, plus interest to be computed on various items constituting this principal sum from dates some of which were as early as 1907 and 1908.   The interest

so directed to be added to principal resulted in a total payable which exceeded by thousands of dollars the amount found by the same decree to be on hand as total assets of the estate. In entering the decree in 1928 no consideration seems to have been given to the fact that over thirteen years had elapsed since the making of the referee's report or to the fact that nearly fourteen years had elapsed since the transactions reported in the accounting had been concluded. The account related only to the assets on hand as of its date. The referee's findings related only to the state of the account at the time of his report. The decree ignored the fact that capital and income transactions presumably occurred within the thirteen or fourteen years which had elapsed since the account was filed. The record discloses no supplementary schedules covering these years.

Petitioner, who seeks to vacate the execution, asserts entire lack of knowledge of the actual entry of the decree. There is some support for her denial. Apparently she was not in fact represented by any attorney at the time the decree was entered. The law firm which had originally represented her had withdrawn as her counsel more than nine years before. This law firm had changed its identity though some of the members of the original firm still were practicing under a changed firm name with new partners. A copy of the proposed decree was served on the successor firm. It could not be served on the original attorneys of record. The successor firm advised the attorneys submitting the decree that they had no contact with the accountant against whom the decree was proposed. They sent the paper to a city address from which the accountant had long before removed. It must be assumed that if any one had called to the court's attention the incongruity of fixing a capital sum as the value of the estate and of then directing the payment of more than was in the estate, the court no doubt would have required a statement of the transactions in the estate during the interval of years which elapsed since the date of the account and the referee's action thereon.

The account as stated was that of the daughter only. In the proceedings on the accounting the creditor-widow-executrix filed a notice of appearance which describes her as " one of the executrices of the last will and testament of John Townshend, deceased." She prefaced her objections and her amended objections to the account by describing herself as " Emma G. Townshend, one of the executrices under the last will and testament of John Townshend, deceased, and a creditor of the above named deceased." She furnished a bill of particulars of one portion of her claim which her attorney subscribed as " attorney for Emma G. Townshend, individually and as executrix." It seems clear from this state of the record

that both as executrix and as creditor she was before the court and owed the obligation to disclose to the court any payments made by her as executrix or received by her as creditor on account of her claim. The decree entered in 1928 adjudicated the sum in the hands of both executrices and directed that the accountant and the creditor as well, in their capacities as executrices of deceased, pay to the creditor-widow-executrix of deceased a sum which, as heretofore stated, was in excess of the amount which the same decree found to be the total capital of the estate on hand.

When the referee reported in 1915 the creditor-widow-executrix was living. When the motion to confirm the referee's report was made in 1927 the creditor-widow-executrix of deceased was living. When the decree was made in February, 1928, the creditor-widow-executrix of deceased was living. Her death did not occur until July 28, 1934, six years and five months after the entry of the decree. The record is bare of any action by this creditor-widow-executrix following the referee's report until its confirmation in 1927 and the subsequent entry of the decree in February, 1928. So far as the record indicates no steps under the decree were taken by the creditor-widow-executrix except to file it in the county of Westchester during the pendency there of condemnation proceedings which affected property in which the accounting executrix had a fee interest and the creditor-widow-executrix a dower interest.

After the death of the creditor-widow-executrix her administrator on December 14, 1934 (more than six years and nine months after the entry of the decree), procured the issuance of an execution by the clerk of this court. No prior execution had been issued on the decree. Various proceedings supplementary to execution resulted in the appointment of a receiver of the property of the accounting executrix. The supplementary proceedings in some aspects were reviewed in the Appellate Division of the Supreme Court which affirmed an order for the examination of the accounting executrix. Suggestion is made here that this court may not grant the relief requested because that action of the Supreme Court has concluded petitioner here. The Supreme Court acted on a fact basis established by the issuance of the execution here. Nothing transpiring in that court affects the fundamental question whether this court should vacate this execution.

Passing for the moment the question whether the court is not constrained to vacate this execution as of course by the quoted provisions of the Civil Practice Act, note should be taken of facts occurring since 1915 which petitioner presents on her application for the order of vacatur. *Prima facie* at least a showing is made that following the date of the referee's report in her favor in 1915

the creditor-widow-executrix herself signed with her co-executrix checks drawn on the estate account to her own order for $15,000, to one of her attorneys for $4,084.35, to another of her attorneys for $3,535.38, and that by similar checks signed by both executrices estate assets were used to the extent of $10,000 to settle a claim against the estate. It is further shown that an estate office was maintained throughout the period from 1915 until about 1932 with a clerk or manager in charge whose monthly salary was at the maximum $150 and at the minimum $116.67. It is to be presumed, of course, that during this same intervening period there was income from such capital of the estate as remained in the hands of the executrices and that also there was income from real estate which was devised to the accounting executrix and which (if needed for the purpose) was subject to the payment of debts of the deceased. It may be assumed upon the proof presented that without waiting for any decree and by joint action of the executrices the creditor-widow-executrix received a very substantial part if not all of the amount due her as found by the referee. It is wholly possible that the creditor-widow-executrix did nothing more to enforce the payment of any balance due her because to do so might have imperilled her status as dowress by forcing the sale of deceased's realty. It is also shown — at least *prima facie* — that when the decree settling the account was entered in 1928 there was not due to the creditor-widow-executrix the sum specified in the decree. These facts would invoke the discretionary power of the court if the matter was one of discretion.

However, it seems to the court that petitioner has an absolute right to the vacation of this execution. By the terms of the Civil Practice Act the delay of more than five years in seeking issuance of the execution imposed upon the administrator of the deceased creditor-widow-executrix the obligation to procure the assent of this court before it was issued. The *ex parte* issuance of the execution was improper. Accordingly the execution is vacated. (*People ex rel. Sackett* v. *Woodbury*, 70 App. Div. 416; Surr. Ct. Act, §§ 83. 316; Civ. Prac. Act, §§ 652, 653.)

If hereafter leave is sought pursuant to law to issue an execution on the decree the burden will be on the administrator of the deceased creditor-widow-executrix to make proof to the satisfaction of this court that the decree " remains wholly or partly unsatisfied."

Submit, on notice, order vacating the execution.