## SUPREME COURT.

THE PEOPLE *ex rel.* GEORGE STAATS and JACOB STAATS agt. LYMAN TREMAIN, Attorney-General of the State of New-York.

Where suits are instituted by the district attorney of a county, in the name of the people, under the 21st section of the "act to establish a Metropolitan police district, comprising the counties of New-York, Kings, Westchester and Richmond," passed April 15th, 1857, to recover penalties, ($50 each,) for publicly keeping and disposing of intoxicating liquors on Sunday, such penalties being for the benefit of "the police contingent fund," thereby authorized ;

*Held*, that where the defendants succeeded in such suits, the people are liable for the costs of the defence, to be paid from the state treasury.

And it is the duty of the attorney-general on request of the defendants, to give the requisite statute *certificate*, that such suits were duly instituted as by law required. (2 *R. S.* 553, § 14.) A *mandamus* is the proper remedy to compel the giving of such certificate in case of refusal by the attorney-general. And it will be no answer for him on such application, to say that no appropriation by the legislature has been made to meet such expenses. It is no reason why the defendants should not have their claim perfected.

C. J. JACK, *for plaintiffs.*
A. CORNWALL, *for defendant.*

S. B. STRONG, Justice. Several suits were instituted against the relators by the district attorney of the county of Kings, in the name of the people, under the twenty-first section of the act to establish a Metropolitan police district, com-

prising the counties of New-York, Kings, Westchester and Richmond, passed on the 15th of April, 1857, to recover penalties of fifty dollars in each case, for publicly keeping and disposing of intoxicating liquor on Sunday. That act expressly authorizes the district attorney to bring such suits in the name of the people, for the benefit of "the police contingent fund," thereby authorized. The actions were commenced in this court; they were tried at a circuit court, and verdicts therein were rendered for the defendants, upon which judgments for their costs were entered up against the people. The Revised Statutes as originally enacted, provide, (2 *R. S.* 553, § 14,) that "whenever costs shall be adjudged against the people in *any* civil suit or proceeding, instituted by *any* officer duly authorized for that purpose, it shall be the duty of the comptroller to draw on the treasurer for the amount thereof, upon the production of an authenticated copy of the record of judgment with a taxed bill thereof; and upon a certificate of the attorney-general that such suit was duly instituted as by law required." The relators applied to the attorney-general to grant the certificate mentioned in the section of the Revised Statutes which I have quoted. That officer denied their application, and they now ask this court to issue mandamus directing him to give the requisite certificate to enable them to obtain the money from the state treasury. There was no dispute on the argument, but that the papers presented to the attorney-general, sufficiently indicated that the suits had been duly instituted as required by law. Indeed, there could not well be any doubt upon that point. The district attorney was clearly authorized by the police act, to commence the suits, and the Revised Statutes indicate that suits properly instituted may fail, and the people of the state be liable for the costs. The attorney-general places his refusal to grant the certificate mainly upon the following grounds : First, that such costs are not a legitimate charge upon the state treasury. Second, that if they had been, the laws do not make it imperative upon him to grant the required certificate; and third, that there has not been any appropriation by the legislature to pay them.

The Revised Statutes of 1830, provided, (2 *R. S.* 619, § 38,) that " in all civil suits by or in the name of the people, instituted by any officer duly authorized for that purpose, and not brought on the relation of any citizen, the people shall be liable for the costs in the same cases and to the same extent as if such suit or proceeding was instituted by an individual." It was subsequently enacted, however, (*Laws of* 1832, *ch.* 246, § 37,) that in all suits thereafter to be commenced in the name of the people of this state, when the debt, damages or sum of money in controversy, if recovered, will not belong to the treasury of this state, the cost of prosecuting such suit or defending, when the defendant succeeds in his defence, shall not be a charge against the state treasury ; but such costs, if the suit shall be brought for a debt, damages or sum of money, or when the matter in controversy if recovered, will belong to any particular county, city, town or village, shall be a charge against such county, city, town or village." If the people had succeeded in the suits against the relators, the money would not have belonged to the treasury of this state, and if the section which I have last quoted had been still the law, the defendant's costs would not have been a charge upon the state treasury.

The Code (§ 303) abolishes the pre-existing fee bill, but it does not in all cases repeal the former statutory provisions relative to the liability for costs. It repeals many of them directly, and others by implication, but in all other instances they still prevail. There is no direct repeal of the provisions of former statutes imposing and regulating the liability of the people of the state for the payment of costs in unsuccessful suits instituted in their name. It is provided, however, (*Code*, § 319,) that " in all civil actions prosecuted in the name of the people of this state, by an officer duly authorized for that purpose, the people shall be liable for costs in the same cases and to the same extent as private parties. If a private person be joined with the people as plaintiff, he shall be liable in the first instance for the defendant's costs, which shall not be recovered of the people till after execution issued therefor against such

private party, and returned unsatisfied." It is provided how-ever, in the next (320th) section, that " in an action prosecuted in the name of the people of this state, for the recovery of money or property, or to establish a right or claim, for the benefit of any county, city, town, village, corporation or per-son, costs awarded against the plaintiff shall be a charge against the party for whose benefit the action was prosecuted, and not against the people. It is apparent from these provisions of the Code, that it was designed that defendants in suits instituted in the name of the people by a competent officer, in the cases au-thorized by law, should recover their costs from some source. The first part of the 319th section refers to and embraces all such cases. The only qualification or exceptions to the lia-bility of the people of the state, are contained in the subsequent part of the same section and in the 320th section. This in effect repeals the provision which I have quoted from the act of 1832, exempting the state from liability, when the sums if recovered, would not have belonged to the state treasury ; ex-cepting from the repeal, however, the cases where the suits were instituted for the benefit of any county, city, town, vil-lage, corporation or person. The legislature by re-enacting one part of the section, and omitting the other, clearly evinced a determination to repeal the part omitted. And such was the legitimate effect. It is clear that the suits against the relators were not prosecuted for the benefit of any county, city, town, village or person. They were instituted for the benefit of the police district, which comprehended all of those bodies and such persons, but was not identical with or comprised within the definition of either. It has been decided by our court of appeals, that a constitutional provision relative to the election of the officers of counties and towns, was not applicable to such district, and the same construction must be given to similar phraseology in an act of the legislature. Neither is the dis-trict a corporation within the meaning of the 320th section of the Code. It is a political institution, possessed indeed of some corporate powers, but not sufficient to entitle it to the designation of a corporation. That the section alluded to was

not intended to include the political divisions of the territory of the state in that term, is apparent from its particular specification of counties, cities, towns and villages, which would have been superfluous if such bodies had been included in the general term. It would be manifestly just that the costs in these suits should be paid by the district for whose benefit they were prosecuted, but the people through their legislature have not thought proper so to provide, and the consequence of this and the act of their officer (for the district attorney represents them) is, that they, and not those who it would seem have been causelessly prosecuted, should bear the burden. They may be relieved hereafter as to the then future if not to the past, by the enactment of an amendment to the law.

The provision of the Revised Statutes was ambulatory, and not only applied to the then existing provisions, but became applicable to such as might thereafter be adopted relative to the payment of the costs of successful defendants in suits prosecuted in the name of the people. It was contended in behalf of the attorney-general, that such provision relates only to suits instituted by him, or those over which he has the official control ; and it was said that he could not with propriety be required to certify that any other had been duly instituted as by law required. But the statute is otherwise. The provision in the Revised Statutes includes every suit in a civil case instituted in the name of the people by *any* public officer duly authorized for that purpose; and the Code includes all civil actions in the name of the people by an officer duly authorized for that purpose. There is no special reference to the attorney-general as the prosecuting officer, in either provision. I can see no difficulty in his obtaining sufficient proof to enable him to give the requisite certificate in cases where the suits had been prosecuted by others. The actual institution of the suit, the propriety of instituting it in the name of the people, and the authority of the prosecuting officer, could be easily ascertained. As to the actual necessity of the requisition for the information of the fiscal officers of the state, that was a matter solely for the consideration of the legislature.

The provision of the Revised Statutes, does not directly and in imperative terms require the attorney-general to give the requisite certificate. But surely, when a statute provides that an act of a public nature shall be performed upon something to be done by a public officer, that in effect amounts to a corresponding direction. It is unreasonable to suppose that it was designed that he should have an unlimited option to perform or refuse what the legislature deemed an act of justice to those who had been causelessly prosecuted. It seems that no appropriation has been made by the legislature for the payment of these costs, and the constitution prohibits the payment of any money out of the treasury of the state, except in pursuance of an appropriation by law. (*Constitution, article* 7, § 8.) That may be a sufficient reason why the comptroller should not be required to make a present draft upon the state treasurer for the payment of the relators' costs. It was so decided by this court at a general term in the third district, in the case of the late Judge WOODWORTH, (16 *How.* 27.) But the effect of the comptroller's draft would be to require a payment which could not be constitutionally made. The attorney-general's certificate does not require any payment. It is a mere preliminary to a future requisition, and possibly and very probably it may be essential to a successful application to the legislature to make the requisite appropriation. The want of such appropriation is no reason why the relators should not have their claim perfected.

In this case there is no question as to the facts which the attorney-general is asked to certify. They are too clear to admit of any doubt. He resists the application on extraneous considerations. As the questions of law raised by him are decided against him, there is nothing left for his determination. His future action must be simply ministerial. A mandamus is, therefore, an appropriate remedy for the relators. As it may be deemed expedient that my opinion upon the questions of law should be reviewed, I shall not direct a peremptory mandamus. An alternative mandamus is awarded.