THE PEOPLE OF THE STATE OF NEW YORK ex rel. RIGNAL D. WOODWARD, Respondent, *v.* SIMON W. ROSENDALE, Attorney-General of the State of New York, Appellant.

*Mandamus — what cannot be reviewed thereunder — certiorari — the duty imposed on the Attorney-General by section 10 of article 1 of chapter 690 of 1892, as amended by chapter 725 of 1893, is judicial — the duties of the Superintendent of Insurance thereunder are ministerial.*

The judgment of an officer, court or body charged with judicial functions cannot be coerced by mandamus. The most that can be accomplished by that writ is to compel such officer, court or body to act, leaving the decision to the free exercise of the judgment of the tribunal charged with the duty of deciding, and reserving to the party affected the right to review the decision by certiorari or appeal.

The office of a mandamus is to set a ministerial or administrative officer in motion and to compel him to act, while a certiorari may be resorted to to review the legality of his act, and if found illegal, to set aside or reverse it.

The Attorney-General, in the performance of the duty imposed upon him by section 10 of article 1 of chapter 690 of the Laws of 1892, as amended by chapter 725 of the Laws of 1893, acts in a judicial character; his duties thereunder are judicial; and by mandamus he can only be compelled to exercise his judgment by acting. A party who claims that his act or determination is erroneous can review it by certiorari and thus correct any error therein.

The duties of the Superintendent of Insurance under such acts are purely and solely ministerial.

APPEAL by the defendant, Simon W. Rosendale, Attorney-General of the State of New York, from an order of the Supreme Court, made at the Albany County Special Term and entered in the office of the clerk of the county of Albany on the 14th day of November, 1894, granting the relator's motion for a peremptory writ of mandamus.

*S. W. Rosendale, Attorney-General,* and *John W. Hogan, Deputy Attorney-General,* for the appellant.

*Woodward & Mayer,* for the respondent.

MAYHAM, P. J.:

The relator and twelve associates signed a certificate of their intention to organize an insurance corporation, and presented it with a proposed charter, also signed and verified by them, to the Superintendent of Insurance, who referred it for examination and

certification to the defendant as Attorney-General, pursuant to section 10 of chapter 725 of the Laws of 1893.

The proposed certificate or declaration was in the following form:

### " EXHIBIT ' A.'

"In conformity with the laws of the State of New York, passed on the 18th day of May, 1892, entitled ' An act in relation to insurance corporations, constituting chapter 38 of the General Laws.'

"We, the undersigned, do hereby declare that we intend to associate and form an incorporated company for the following purposes, to wit: The inspection and certification as to the sanitary conditions of buildings and premises. The insurance of owners, lessees or tenants of buildings and premises against loss or damage to life or health from causes arising from the imperfect sanitary conditions of such buildings or premises; the insurance of landlords, lessees, tenants or occupants of houses, flats, office buildings or other structures from loss occasioned by imperfect plumbing, bursting pipes or leaks, to walls, ceilings, furniture or goods, and for the doing of such other business as may be lawfully connected with the business of sanitary inspection, care and insurance, under subdivision 8 of section 70, article 2 of chapter 690 of the Laws of 1892, and that we propose to adopt the following charter as the charter of said company."

The proposed charter was attached to this declaration.

To this communication from the Superintendent of Insurance, the Attorney-General made the following reply, declining to grant a certificate:

### " EXHIBIT ' B.'

### "STATE OF NEW YORK:

" ATTORNEY-GENERAL'S OFFICE.   }
" ALBANY, N. Y., *Sept.* 22, 1893. }

"Hon. JAMES F. PIERCE, *Superintendent of Insurance:*

"DEAR SIR — I have the honor to acknowledge the receipt of yours of the 12th instant, inclosing proposed declaration and charter of the Sanitary Inspection and Insurance Company of New York, and you ask if there is no question as to the legal right of said company to organize under the Insurance Law to transact the business specified in the declaration and charter, and the papers are otherwise made out and executed in accordance with the Insurance

Law, that I attach the certificate of this department approving the same.

" In reply, permit me to say that this application is made under subdivision 8, section 70 of the Insurance Law. The business proposed to be carried on is the inspection and certification as to the sanitary conditions of buildings and premises against loss or damage to life or health from causes arising from the imperfect sanitary conditions of such buildings or premises ; the insurance of landlords, lessees, tenants or occupants of houses, flats, office buildings or other structures from loss occasioned by imperfect plumbing, bursting pipes or leaks, to walls, ceilings, furniture or goods, and for the doing of such other business as may be lawfully connected with the business of sanitary inspection, care and insurance under subdivision 8 of section 70, article 2 of chapter 690 of the Laws of 1892.

" In my opinion this is not a kind of casualty insurance such as is specified in any of the subdivisions of section 70 ; nor is it a kind of insurance that can be lawfully carried on under said section.

" I, therefore, decline to attach my certificate of approval to said proposed declaration and charter.

" Very truly yours,

" (Signed)      S. W. ROSENDALE,

"*Attorney-General.*"

The relator thereupon applied at Special Term for, and obtained the following order : " On reading and filing the affidavit of Rignal D. Woodward, verified on the 26th day of September, 1893, and the notice of motion attached thereto, and after hearing Rignal D. Woodward, the relator, in person, for the motion, and Francis R. Gilbert, of counsel, appearing for the defendant, and objecting that mandamus is not the proper remedy, and that the act of the Attorney-General in declining to make and sign the certificate in the moving papers referred to, can only be reviewed by certiorari, and in opposition to the motion, and due deliberation being had thereon. It is ordered that the objections raised by the counsel for the Attorney-General, defendant herein, be overruled.

" It is further ordered that the prayer of the relator herein be, and the same is hereby granted, and that a peremptory writ of man-

damus forthwith issue out of and under the seal of this court, directed to the above-named Simon W. Rosendale, Attorney-General of the State of New York, requiring and commanding him to certify to the Superintendent of Insurance that the declaration and charter of the proposed Sanitary Insurance and Inspection Company of New York is in accordance with the requirements of law, as provided for by section 10 of article 1, chapter 690, Laws of 1892, to wit, in accordance with section 70 of article 2 of chapter 690, Laws of 1892, of the State of New York.

"It is further ordered that the relator is hereby allowed fifty dollars costs of this proceeding."

From this order and determination the defendant appeals to this court. The first and most important question presented by this appeal for examination is whether the Attorney-General, in the performance of the duty imposed upon him by section 10 of article 1 of chapter 690 of the Laws of 1892, as amended by chapter 725 of the Laws of 1893, acts in a ministerial or judicial character. If in the former, then he had no discretion and no right to exercise his judgment or follow his convictions, but must, as Attorney-General, certify such declaration and proposed charter to the superintendent to be in accordance with the requirements of law, whether or not he believed it conformable thereto.

In other words, his only duty is to make and sign the certificate without regard to his own judgment as to its accuracy or truth, or suffer the pains and penalties of a writ of mandamus, obedience to which might compel him to certify falsely.

If, on the other hand, his duties were judicial or *quasi* judicial, he could only be compelled to exercise his judgment by acting, leaving the party who claimed that his acts or determinations were erroneous to his certiorari for the correction of such error. We can best determine whether he acts ministerially or judicially by reference to the act of the Legislature from which he derives his authority. Section 10 of chapter 725 of the Laws of 1893, under which the Attorney-General is required to act, is as follows :

"When application is made to the Superintendent of Insurance by any persons desiring to become incorporated as an insurance corporation, or for authority to transact the business of insurance in this State under or pursuant to any declaration and charter presented

for filing in the insurance department; or any amended declaration or charter required by law to be filed or to be approved by the superintendent, the superintendent shall not file such declaration and charter or grant such certificate of authority, until such declaration and charter have been examined by the Attorney-General and certified by him to the superintendent to be in accordance with the requirements of law."

The plain duty imposed by this section upon the Attorney-General is to examine the declaration and charter proposed for the purpose of determining whether they are in accordance with the requirements of law. That examination involves the exercise of his judgment and a determination of the question whether or not the subject of the proposed insurance, the form of the application and charter proposed are within the scope and conformable to the law under which the respondents propose to organize and incorporate.

He cannot discharge that official duty without the examination of the proposed articles and charter, or comparison of the same with the law, and an official determination, which is to be expressed in his official certificate that they are conformable to the law. Suppose such examination leads him to the conclusion that they are not conformable to the law? Must he still abdicate his judicial functions imposed by this law, which requires him to determine, and in violation of that determination perform only this ministerial function of signing and filing a certificate which he believes false? We think not. The law has long been settled that the judgment of an officer, court or body charged with judicial functions cannot be coerced by mandamus.

The most that can be accomplished by that writ is to compel such officer, court or body to decide, leaving the decision to the free exercise of the judgment and conscience of the tribunal charged with the duty of deciding, and reserving to the party affected by such decision the right to review the same by certiorari or appeal. This rule is well stated in *The Matter of Petition of Howland* (43 N. Y. 457), where the Court of Appeals say: "This is the universal rule in respect to all subordinate courts and tribunals clothed with the exercise of judgment or discretion. They may by mandamus be compelled to proceed and determine the matter, but cannot be compelled to decide in any particular way. If they could it would

no longer be their judgment or discretion, but that of the court awarding the writ."

Under this rule, if the Attorney-General had refused to pass upon the sufficiency and legality of the application and proposed charter of the relator, a mandamus would issue to set him in motion and compel him to make the examination contemplated by section 10 above quoted, but could not issue to compel him to decide in any particular way. But in this case it is not objected that he failed to act; the only complaint is, that having acted and made a determination, he did not determine as the relator desired.

If the court can compel him by this writ to act as required against his own judgment, his act and determination would, in the language of the court in the case last cited, "no longer be (his) their judgment and discretion, but that of the court awarding the writ."

In that event the court would not be reviewing the judicial determination of the Attorney-General by any method of review known to the law or practice, but would be substituting its determination in the first instance, and compelling him to make a certificate which the court is not authorized by statute to make and which he had determined he could not legally make. The case is not like that of a review by the court on certiorari of his determination and a reversal of it if erroneous, but rather an effort to have the court determine for him how he shall decide in a given case, and thus to compel him to adopt and act upon as his own the judgment of the court. It is no answer to this suggestion that if his decision was reversed on certiorari, and he contumaciously refused to obey the order of the court, made on such reversal, the court would still be compelled to enforce its determination by mandamus.

His duty in that event would become purely ministerial, requiring him simply to execute the judgment of the court. But it is said that the act of 1893, authorizing the certificate of the Attorney-General that the application conformed to law, is similar to that vested in many cases in the Secretary of State and Comptroller, and to that heretofore vested in the Superintendent of Insurance, and that while the Attorney-General is the law officer of the State, he as such has no judicial functions, and, therefore, is but a ministerial administrative officer.

While, in the absence of any statutory authority conferring on him

judicial functions, this may be conceded, yet the Legislature, in taking this duty from the Superintendent of Insurance, and conferring it upon the law officer of the State, must have had in view the presumed legal capacity of the Attorney-General to examine, determine and certify to the insurance department his determination of questions of purely a judicial character, which, when certified, fixed the ultimate rights of the appellant and rendered the duties of the Superintendent of Insurance purely and solely ministerial, and leaving nothing for him but to file the application and charter, and grant the certificate of authority.

It is fair to presume, therefore, that when the Legislature transferred the determination of these questions from the insurance department to the Attorney-General, authorizing him to make a determination and record in the form of a certificate that the law had been complied with, that they intended to and did impose upon him certain *quasi* judicial functions which he did not before possess.

These duties when performed by the Superintendent of Insurance, have frequently been held to be of a judicial character, and, when determined by him, the courts have refused to interfere by mandamus to change such determination.

In *The Matter of Schmitt et al.* v. *Maxwell* (32 N. Y. St. Repr. 573) this court held that the Superintendent of Insurance acted judicially in determining whether or not the proposed association had, in all respects, complied with the provisions of law authorizing its incorporation, and affirmed the order of the Special Term refusing a peremptory writ of mandamus, and in rendering their opinion uses this language: "It is plain that the superintendent was confronted with a grave question of fact, not only judicial in its nature, but one requiring the special facilities and qualifications which that office is presumed to command and possess. Unless he determined it in favor of the society no occasion for the ministerial duty of issuing the final certificate exists," citing the following cases in the Court of Appeals: *People* v. *Common Council* (78 N. Y. 33); *People* v. *Chapin* (104 id. 96); *People* v. *Barnes* (114 id. 317).

If in *Schmitt* v. *Maxwell* (*supra*) the Superintendent of Insurance, in determining whether the appellants had complied with the provisions of the Insurance Law, acted judicially, and for that reason

could not be coerced by mandamus, for the same, and, we think, a much stronger reason, the Attorney-General, when called upon to make a similar determination, could not be controlled by mandamus in the decision he was required to make, in the case at bar.

If we are right in our conclusion that this statute imposed upon the Attorney-General the performance of a judicial act, in determining whether this application and charter were conformable to law, then it must follow as a legal sequence that such judicial determination cannot be reviewed by this court on an application for a mandamus.   His judgment and determination is not before us for review.   That only can be reviewed in some other proceeding in the nature of an appeal or certiorari.

The office of a mandamus is to set a ministerial or administrative officer in motion, to compel him to act, while a certiorari may be resorted to to review the legality of his act, and if found illegal to set them aside or reverse them.

We are cited to many cases by the learned counsel for the relator where ministerial officers have been compelled by mandamus to perform their ministerial duties, but none has been cited where an officer acting judicially has been compelled by this writ to decide in a way differing from his own determination or decision.   In the case of *The People* v. *Tremain, Attorney-General* (17 How. 10), cited by the learned judge at Special Term, the statute required the Comptroller to draw his warrant upon the Treasurer, where costs in a civil suit or proceeding had been adjudged against the State, for the amount of the same, on the production of an authenticated copy of the record of the judgment, and the certificate of the Attorney-General that such suit had been duly instituted as by law required.

In that case a Special Term held that a mandamus would lie to compel the Attorney-General to make such certificate.   But that case was reversed on appeal by the General Term upon another point.

But in such a case the Attorney-General had nothing to pass upon judicially; the record of the judgment to which his certificate was to be affixed imparted absolute verity, that the suit in which the judgment was obtained was duly instituted as by law required, and the Attorney-General, in enforcing the payment of the judgment by his certificate, was in the performance of that duty as much a minis-

terial officer as the sheriff who was required to execute final process in the collection of the judgment, or the clerk in satisfying a judgment of record after the execution had been returned satisfied.

In the case of *The People ex rel. Bockes* v. *Comptroller* (115 N. Y. 302) the comptroller had no judicial duties to perform. It was his ministerial duty to pay the salary of the judge, and on his failure to do so it is clear that he could be compelled to do so by mandamus. The question of the propriety of proceeding by mandamus was not raised or determined in that action, and that case is, therefore, no authority in this one.

The case of *People ex rel. Gilbert* v. *Wemple, Comptroller* (125 N. Y. 485), presented the same question as that presented in the case of *Bockes* v. *Wemple* (*supra*), and, therefore, is not an authority in this case.

There is, therefore, no real analogy between the statute under which the Attorney-General was required to act in that case and the one under consideration. In the view which we have taken in this case we do not deem it important to examine the question of the correctness of the determination of the Attorney-General in holding that the proposed insurance was "not a kind of casualty insurance such as is specified in any of the subdivisions of section 70, nor is it a kind of insurance that can be lawfully carried on under said section."

That question is not properly before us on appeal from an order granting a mandamus.

The order must be reversed, with fifty dollars costs and printing disbursements.

PUTNAM, J., concurred; HERRICK, J., not acting.

Order reversed, on ground of lack of power to grant mandamus, with fifty dollars costs and printing and other disbursements.