In the Matter of the DAUGHTERS OF ISRAEL ORPHAN AID SOCIETY, INC. (HEBREW NATIONAL ORPHAN HOME).

Supreme Court, New York Special Term, June 20, 1925.

Corporations — membership corporation — approval of certificate of incorporation by justice of Supreme Court — justice must determine that objects and purposes are in accord with public policy — approval does not relate to form of certificate — affidavit should be presented outlining objects and making statement as to prior application as required by Rules of Civil Practice, rule 61 — affidavits by all incorporators as to formal statements in certificate not necessary to show compliance with General Corporation Law, § 4 — corporate title in foreign words composed of English letters, permitted by General Corporation Law, § 5, should be explained by affidavit — not necessary that certificate should state date of annual meeting — fixing date of annual meeting on Sunday not necessarily ground for refusal to approve — improper to fix number of directors at not more than given number — certificate should show that profit is not to be derived and that purpose is merely to extend financial assistance to orphan home.

It is the duty of a justice of the Supreme Court to whom application is made for approval of the certificate of incorporation of a membership corporation proposed to be formed under section 41 of the Membership Corporations Law, to determine that the objects and purposes of the proposed corporation are in accord with public policy, and it is not a part of his duties to pass upon the mere formal requisites of the certificate; the Secretary of State must pass upon the formal requisites of the certificate.

If the purposes of the proposed corporation are not fully stated in the certificate, it is advisable for the applicants for approval in order to assist the justice in the discharge of his duties, to file an affidavit containing a complete statement of the aims and purposes of the corporation, together with any other pertinent facts, and in any event an affidavit should be annexed containing the necessary recital in respect to any prior application as required by rule 61 of the Rules of Civil Practice.

It is not essential that all the incorporators shall make affidavit as to the age, citizenship and residence of the incorporators for the purpose of showing that section 4 of the General Corporation Law has been complied with. In that respect an affidavit by the attorney who appears for the incorporators or any other person familiar with the facts should be sufficient to guide the justice in the exercise of his discretion.

While section 5 of the General Corporation Law permits the title of a corporation to be in foreign words, if those words are composed of English letters, nevertheless, where that is done, the application for approval should be accompanied by an affidavit explaining the meaning of the foreign words used in order to enable the justice before whom the application is made, to determine that the use of the proposed name will not engender discord or injure the feelings of any section of the community.

It is not essential that the certificate of incorporation should fix the date of the annual meeting, and a certificate is not defective which fixes a definite date so that in certain years the annual meeting will be held on Sunday, or which actually provides for the holding of the annual meeting on Sunday. However, while certificates providing for meetings on Sunday should not be summarily rejected, still the objects contained therein should be scrutinized with a view to determine whether such meetings would tend to produce conditions which might violate the provisions of the Sunday laws.

The certificate of incorporation should state the exact number of directors and a certificate is defective which provides that the directors shall not be more than a certain number.

It is necessary to satisfy the Secretary of State that the proposed membership corporation is not organized for the purpose of profit, and, therefore, the certificate should show in this case that the aid intended to be furnished is of a purely voluntary character and the certificate should show also that the purpose of the corporation is not to maintain an orphan home, which its title seems to indicate, but only to extend financial assistance to the organization that is conducting a home.

Application for approval of certificate of proposed membership corporation.

*Nathan D. Perlman,* for the applicant.

Levy, J.:

This application for approval of the certificate of a proposed membership corporation comes to me with certain obvious defects. In view of the frequency with which these occur and the evident uncertainty in the minds of the profession regarding the purposes of the statute insofar as it requires the approval by a justice of the Supreme Court, this seems an appropriate occasion for an expression of opinion on the subject.

Section 41 of the Membership Corporations Law (as amd. by Laws of 1924, chap. 519) requires such written approval of the certificate, indorsed thereupon, etc., before it is filed. This action cannot be deemed a determination that the mere formal requisites laid down by the Legislature have been fully met. Such matters of form are within the province of the Secretary of State, who as stated in *People ex rel. Woodward* v. *Rosendale* (5 Misc. 378; revd., on other grounds, 76 Hun, 103) has to determine whether the purposes of the proposed incorporation are within the statute and whether the articles are in proper legal form. It thus follows that even where the approval of the justice of the Supreme Court has been given, the Secretary of State may still refuse to file the certificate because of formal defects. (*People ex rel. Blossom* v. *Nelson*, 46 N. Y. 477.) It seems to me, therefore, that the written approval referred to is in the nature of a finding that the objects and purposes of the proposed corporation are in accord with public policy, a determination that is more than ministerial and not a mere duplication of the function of the Secretary of State. This view is borne out by the opinion in *Matter of Agudath Hakehiloth* (18 Misc. 717), in which it was held that the question of approval is "not to be determined arbitrarily or capriciously, but upon reasons of public policy and by considerations of public interest." A similar interpretation of the function of the justice in such matters is revealed in *Matter of Catalonian Nationalist Club* (112 Misc. 207), in which approval was refused because the object of the corporation seemed to tend toward perpetuating people in racial groups. Furthermore, the very fact that the clause requiring approval by such judicial officer, is followed by a provision requiring similar action by the State Board of Charities in the case of corporations organized for eleemosynary or philanthropic purposes, would indicate that the required approval in both instances relates to content rather than technical form. This interpretation is strengthened by the ruling in *People ex rel. Woodward* v. *Rosendale* (76 Hun, 103), in which the function of the Attorney-General in recommending to the Superintendent of Insurance the approval of an incorporation pursuant to section 10 of the Insurance Law was held to be a judicial and not a ministerial exercise of power. An interesting sidelight upon this view is cast by the policy of our sister State of Pennsylvania, the statutes of which (Act of April 29, 1874, Penn. Laws of 1874, pp. 73, 75, No. 32) provide for approval by the Court of Common Pleas of certificates of membership and kindred corporations, with a special purpose of ascertaining that its objects are lawful and not injurious to the community. In commenting on this, the highest court of that State in *Matter of Deutsch-Amerikanischer Volksfest-*

*Verein* (200 Penn. St. 143, 145) observed: "The court undoubtedly may and should look into the nature of the proposed social enjoyment, to see that it is 'lawful and not injurious to the community,' and may require specific statements and evidence to that end."

The law, therefore, delegates to the justice the responsibility of scanning the objects of the proposed membership corporation in a manner beyond the mere formal review by the Secretary of State. If the purposes of the proposed corporation are not fully stated in the certificate, it is indeed highly advisable for applicants, in order to assist the justice to discharge his duties intelligently, to set forth in an accompanying affidavit a complete statement, which may be in concise form, however, of the aims and purposes of the proposed organization together with any other pertinent facts. But in any event, an affidavit should be annexed, following the general requirements under rule 61 of the Rules of Civil Practice, which contains the necessary recital in respect to any previous application.

For a number of years past there has been a tendency, seemingly confined to this department, to follow the rule laid down by the late Mr. Justice Goff in *Matter of Wendover Athletic Assn.* (70 Misc. 273), that in addition to the acknowledgment as to age, citizenship and residence under section 4 of the General Corporation Law (as amd. by Laws of 1923, chap. 732), affidavits by all of the individual incorporators, etc., should be annexed in proof of these facts. With all deference to the learned opinion in that matter, it is difficult to see how such additional requirement can be justified under the statute. This section of the law covers all corporations, membership as well as business, and was amended in 1923 (Laws of 1923, chap. 732) to read as follows: "A certificate of incorporation must be *personally* executed by natural persons of full age, at least two-thirds of whom must be citizens of the United States, and one a resident of this State." (Italics mine.)

The change consisted essentially of the insertion of the word "personally." For many years both before and subsequent to this amendment, business corporations have been formed by filing certificates with the Secretary of State without furnishing the affidavits made necessary by the opinion in the *Wendover* application. The Legislature in enacting the statutory modifications of 1923, doubtless must have been aware of this practice, and if it had deemed it contrary to the policy of the State, would certainly have required the affidavits in the form suggested. Where our legislative body has sought to make provision for both affidavits and acknowledgments, it has expressly so stated. (See, for example,

Stock Corp. Law of 1923, § 16, as amd. by Laws of 1924, chaps. 124, 441.) The insistence as a prerequisite upon affidavits by all the incorporators, as where there are a great many of them, and possibly some temporarily beyond the jurisdiction of the State, as evidenced by actual experience in matters before me, may involve hardship and delay, and in the absence of express legislative direction, should not be demanded.

In the *Wendover* matter, however, it is suggested that there is an implication in the law which would necessitate such sworn statements, because the Legislature intended " that the judicial officer from his professional training and habit of thought should apply those tests and rules to the certificate which are applied in judicial procedure in order to ascertain facts, as distinguished from mere assertion." In so far as this opinion covers the necessity of scrutinizing the objects of the corporation I agree with it. But as it was applied by the learned justice as a reason and justification for requiring the affidavits in the form determined by him, because seemingly the Legislature had intended to avail itself of the assistance of a trained judicial mind in passing upon the truth of the statements as to citizenship, residence, etc., I cannot accept it. Even if the law required such affidavits in support of the truth of the formal statements in the certificate, it would not require the assistance of a judicially trained mind to pass upon these. I, therefore, find myself unable to adopt the view that a necessary inference from the legislative provision for approval by a justice is the requirement of affidavits in form as suggested in the *Wendover* matter. The fear therein expressed that " in case of false or erroneous statement it would be impossible to fix responsibility upon the individuals," is hardly grave enough to require any such drastic conditions as are imposed by that decision. I am not so apprehensive over the probable need of invoking the criminal statutes in matters of this sort, which unfortunately with much greater frequency actually occur in the trial of litigated causes in the very courtroom. Accordingly a statement in the affidavit, made by the attorney for the incorporators or any other person familiar with the facts, should be sufficient to guide the justice in the exercise of his discretion and to fix responsibility for false allegations, if there be any.

Here I may suggest an additional element which, in cases where it applies, should be embodied within the affidavit. Section 5 of the General Corporation Law (as amd. by Laws of 1923, chap. 732) allows corporate titles in other languages as well as in English provided they are in English letters or characters. The contrary, but rather widespread belief, is based upon an obsolete

opinion of the Attorney-General (Reports of Atty.-Gen. 1899, p. 136; Id. 1912, vol. 2, p. 553), founded upon the law as it existed prior to the amendment enacted in chapter 479 of the Laws of 1913.  I am frank in stating that I prefer titles of this sort to be in English, but where the title is in a foreign language or of a symbolical character, as in the case where a group chooses the name of a town in a foreign country of their origin, or where organizations base their selections upon Biblical sources in a language other than English, undoubted indication of its meaning should be given in the explanatory affidavit to enable the approving officer to judge that the use of such name will not engender discord or injure the feelings of any section of the community.

A further objection is frequently made to the form of the certificate on the ground that it fails to state the time of its annual meeting, or that it mentions a specific date, which might fall on a Sunday. The absence of a provision fixing the time for the annual meeting furnishes no ground for criticism, as the statute does not require the fixing of such time.  The Membership Corporations Law, as codified by chapter 559 of the Laws of 1895, did contain such a requirement in section 31, the predecessor of the present section 41; but it was eliminated by chapter 205 of the Laws of 1897 and is not contained in the appropriate place in the present Consolidated Laws.  The frequent insertion of the time of the annual meeting is probably due to the copying of forms which follow the old statute and to the possible impression that the present law still requires it.

If, however, such a provision is voluntarily embodied, approval should not be withheld from the entire certificate merely because a specific date is fixed for the annual meeting, which might make it fall on a Sunday; or even if such date should be particularly named as Sunday.  While at common law judicial proceedings were prohibited on that day of the week, all other transactions were held to be valid, except so far as forbidden by statute.  (*Merritt* v. *Earle*, 31 Barb. 38.)   As was said in *People ex rel. Corrigan* v. *Young Mens, etc., Benev. Soc.* (65 Barb. 357): " Nothing in the statute forbids meetings of a society, or transacting its business [on Sunday]; and however objectionable it may be to hold business meetings on that day, still it is not forbidden as illegal."

The same principle was upheld in *McCabe* v. *Father Matthew Total Abstinence Ben. Soc.* (24 Hun, 149).  That organization customarily held its meetings on Sunday, and a resolution of suspension of a member was declared valid notwithstanding its adoption on that day.

As is also implied in that case, there can be no objection either on legal or moral grounds of meetings of benevolent and religious

corporations on Sundays to carry out the purposes for which they are organized. " It is a pure charity to relieve sick members, and the passage of such a resolution [for relief] on Sunday would be unobjectionable."

It is perfectly clear that since membership corporations are not organized for commercial profit, their Sunday meetings could not be deemed " labor " within the meaning of the statute.   Such meetings could certainly not be placed in the category of disturbances of the peace of the Sabbath.   Certificates providing for Sunday meetings should, therefore, not be summarily rejected, but the objects contained therein scrutinized with a view to determining whether such meetings would tend to produce conditions which might violate the provisions of the Sunday laws.

It is a well-known fact that a great many membership corporations hold their meetings on Sunday, the one day of the week when the leisure of their members allows them to confer on matters connected with the objects, benevolent, self-improvement or other, for which they were established.   It would be a hardship for such organizations and a distinct loss to the community at large, if such meetings were proscribed by being considered as against public policy.

Testing the application before me in the light of well-established principles, it is defective in not being accompanied by an affidavit reciting those additional facts which I have indicated, from which I can draw the proper inferences for the exercise of my discretion. The acknowledgments were taken improperly by one of the signers. (*People ex rel. Erie R. R. Co.* v. *Bd. R. R. Comrs.*, 105 App. Div. 273.)   The certificate also fails to fix the number of directors definitely; the provision for a number " not exceeding thirty-five " does not meet the statute.   It will be necessary to satisfy the Secretary of State that the proposed corporation is not organized for purposes of profit, and the certificate should, therefore, show that the aid intended to be furnished is of a purely voluntary character.   The objects should also be stated explicitly enough to show that the purpose is not to maintain an orphan home but only to extend financial assistance to the organization that is conducting it.

Application denied with leave to renew upon proper papers.