In the Matter of the Application of GENERAL VON STEUBEN BUND, INC., for a Certificate of Incorporation.

Supreme Court, Special Term, New York County, February 20, 1936.

*John Marx*, for the application.

*Henry P. Velte*, opposed.

LEVY, J. There has been submitted before me for approval, pursuant to section 10 of the Membership Corporations Law, a certificate of incorporation of General Von Steuben Bund, Inc. I quote the stated objects of the corporation in full: " The purposes for which said corporation is to be formed are to unite persons of German birth or descent, and Christian faith, promote fellowship and extend acquaintance among them, and to extend assistance, consolation and comfort to such persons and their families when overtaken by misfortune, sickness, bereavement or death; to preserve in such persons the best traditions and ideals of the land of their nativity or ancestry and to harmonize the same with those of America." It may be noted that the purposes seem to be within the law, even possibly to the extent of limiting the benefits of the society to Germans of Christian faith. We have examples of sectarian benevolent societies in this State. Nevertheless, in examining the application, I believe it is the duty of the justice to act more than as a ministerial officer in meeting the requirements of the statute, already cited. In *Matter of Daughters of Israel Orphan Aid Society, Inc.* (125 Misc. 217), I had occasion to say, referring to several authorities, that the purpose of the written approval of a certificate is to determine whether the objects and purposes of the proposed corporation are in accord with public policy. A society which submits a certificate of incorporation may well conceal its true object while expressing its purposes in acceptable or, at least, innocuous form. But where evidence is presented to the justice from other sources or where information has come to him that the objects are not as expressed, it is his duty to take due notice. As I observed in the *Israel Orphan Aid Society* case, the Supreme Court of Pennsylvania commented along similar line on the purpose of judicial approval in *Deutsch-Amerikanischer Volksfest-Verein* (200 Penn. St. 143, 145; 49 A. 949): " The court undoubtedly may and should look into the nature of the proposed social enjoyment, to see that it is ' lawful and not injurious to the community,' and may require specific statements and evidence to that end."

I have before me a program of celebration of Steuben day by the proposed General Von Steuben Bund, Inc., on Wednesday, Novem-

ber 27, 1935, in New York city.   That program, which is virtually entirely in German, contains the following statements of the purpose of the Steuben celebration, which I reproduce in translation:

" The patron saint of our union for German culture and benevolence, General Frederick Von Steuben, who by the creation of a fighting American Army has contributed so infinitely to the victorious conclusion of the American War of Independence, has not been valued by the Americans in comparison to his importance and has been as good as forgotten.

" A determined group of German women and men with sound national sense have made it their task to call into life a cooperative labor which will transmit the ideal spirit of Steuben, his greatness, his modesty, his sacrificing spirit not only to persons of their descent but also to Americans in general."

In celebration of Steuben day by that society which seeks incorporation, we find a complete German program of fourteen numbers with speeches exclusively in German.   The only American feature is the opening song, " The Star Spangled Banner," the effect of which, however, is neutralized by the singing of the Horst Wessel song, the official hymn of the National Socialist dictatorship in Germany.   If the evidence indicates that the true purpose of the organization is to act as a vehicle for the establishment among its members of a dual or divided allegiance, it is not entitled to the official blessing of our courts in the form of judicial approval of its certificate.

In *Matter of Catalonian Nationalist Club* (112 Misc. 207, 208) Judge WHITAKER refused to approve a certificate, the objects of which were connected with a foreign political purpose.   He said: " It has, I think, been demonstrated in the recent past that the great need of the time is the teaching of American ' culture,' and that there has been too much teaching and adherence to foreign ' culture,' the result of which has been that naturalized citizens to the second generation have retained a dual fealty.   Organizations for the purpose of perpetuating the division of the people into racial groups and thus retarding homogeneity should not be sanctioned.   The declared purposes of the corporation are solely in the interest of the province of Catalonia, and if carried out to their ultimate completion might result detrimentally to American interests.   The approval of the court is, therefore, withheld." To the general principles involved in this memorandum I subscribe. There may be isolated exceptions, particularly where the object is to promote an understanding of, and sympathy with, the culture of the land of one's origin, with the object of broadening the educational horizon and not with the aim of creating a vehicle for propa-

ganda. To be sure, there is nothing which prevents a number of individuals from studying the tendencies and the culture of a foreign government, and no legal license is required for that purpose. Where, however, persons so banded together desire to secure the privilege of a corporation, another situation is presented.

Perhaps the decisive factor in reaching the result here is the fact that there has been in existence since 1919 an unincorporated society of national scope known as the Steuben Society of America. That organization is made up of American citizens of German descent. It honors the name of Steuben as an American of Teutonic birth, whose contributions to the cause of American independence were of superb character and who honored the land for which he fought by becoming a loyal American citizen and spending the rest of his days here. That society is not connected with the sponsorship of the proposed corporation, and in fact vigorously objects to the grant of a certificate to a society which will bear the name that is associated in the public mind with the existing organization. The principles of the older society have been expressed in a political creed which embodies the doctrine of "America for Americans * * * freedom from European entanglements * * * the Stars and Stripes forever." In this creed the members appear to be following in the footsteps of General Von Steuben himself. While he was the first president of the German Society of America, of which the present Steuben Society is a successor, its main objects were to Americanize immigrants who came to this country to make their permanent home. General Von Steuben did not squint when he looked at his adopted land. In his answer to the address of the city of Albany conferring the freedom of the city upon him, he said: "Love of honor and a regard to the liberties of mankind led me to America; but the virtues of her brave sons have urged my stay, and induced me to the exertion of every talent I was possessed of in her service." (Kapp, Life of Steuben, p. 694.) And in his oration at the dedication of the Steuben monument December 7, 1910, Congressman Richard Bartholdt, himself a loyal adopted son of German origin, said, referring to the great audience assembled: "They have come because Baron Steuben has shed luster on the German name by the display of qualities and virtues which they admire, and among those none has more powerfully thrilled their hearts than his example of unswerving loyalty to America." When Von Steuben became a founder of the Society of Cincinnati, consisting of American leaders who, following the noble example of the great Roman Cincinnatus, turned their swords into ploughshares upon the conclusion of the American revolution, he accepted with approval one of the following unchangeable principles of that society,

" An incessant attention to preserve inviolate those exalted rights and liberties of human nature for which they have fought and bled, and without which the high rank of a rational being is a curse instead of a blessing." (Kapp, p. 556.) I consider it may be safely said that Von Steuben fully believed that law is the highest form of a people's will in a state of peaceful government and the highest act of their sovereignty; and indeed, that the liberties of a people would be suspended by a thread more slender than the hair which held the tyrant's sword over the head of Damocles if they could not obtain adequate protection against invidious and inhumane usurpations. The principles professed and openly advocated by Von Steuben as consistent with human liberties on the free soil of America are inconsistent with those of a dictatorship. The latter cannot be made to " harmonize  *  *  *  with those of America," as the incorporators have avowedly set it their task to do.

The celebration of an annual Steuben day as proposed by the latter cannot but ring a note of dissonance with those sounded by Von Steuben himself. Ordinarily, no inquiry will be made as to whether a society which adopts the name of a famous man in history intends to follow in his steps and in accordance with his tradition. But here the situation is different, because the society virtually makes it one of its objects to preserve the memory of General Von Steuben and to make an appreciation of his services more widely known both here and in Germany. And it becomes even more serious when it is considered in relation to the existing society which also customarily celebrates a Steuben day and which, so far as its principles are expressed, has attempted to preserve his fame and achievement in good American tradition.

Considerable opportunity might arise, to the detriment of the existing Steuben Society, in confounding the mixed act vities of the proposed corporation with those of the society of long existence. If the two names were connected with commercial enterprises, I have no doubt that the certificate would be refused for filing because of the possible confusion of names. I do not believe that a differentiation should be made because both societies happen to have as their object merely social and other non-profit purposes. As is said in *Society of the War of 1812* v. *Society of the War of 1812 in the State of New York* (46 App. Div. 568), the right of injunctive relief against the improper use of a corporate name which interferes with the plaintiff's business is not limited to business of a commercial or trading character. This principle is expressly approved in *Benevolent and Protective Order of Elks* v. *Improved Benevolent & Protective Order of Elks* (205 N. Y. 459). I do not think that the omission of the existing Steuben Society to obtain a certificate of

incorporation changes the principle, so as to sway a justice of the Supreme Court in giving an organization a monopoly of a name hitherto enjoyed by another unincorporated organization, with undoubted public deception resulting therefrom. Taking all the circumstances together, it would be contrary to public policy to approve the certificate of the proposed organization known as the General Von Steuben Bund, Inc.

The application is denied.