In the Matter of F. D. R. SOCIAL & CIVIC CLUB, Petitioner.

Supreme Court, Special Term, Bronx County, October 25, 1945.

*Barnet Schwartz* for petitioner.

HAMMER, J. There has been submitted at Special Term of the Supreme Court, Bronx County, for approval, a certificate of membership corporation, pursuant to the Membership Corporations Law. The name proposed is F. D. R. Social and Civic Club, and among the purposes is the following: " By its name to aid in the perpetuation of the name of our beloved late leader and President of the United States of America ". It is also stated that: " * * * the territory in which its operations are principally to be conducted is the states, territories and dependencies of the United States ".

Undoubtedly, this is but one of numerous similar applications which will be presented with names containing variations of our late President's name or initials. It is understood also that the executors of the will of Franklin Delano Roosevelt, deceased chief executive, have had requests for the approval and use of similar names and that they have refused approval of such use by special groups. That procedure, it appears, was followed in this very instance, and the attorney for the proposed association reported that the executors would not take a position in the matter as it was one concerning which it was felt the court would exercise wise discretion. It is matter of common knowledge that the memory of President Franklin Delano Roosevelt is perpetuated by reason of his own living acts and statements, as well as through his achievements, both in State and national affairs and international relations. It is also known that physical memorials, either of his own selection or with the sanction and approval of the late President's executors, the members of his family and his close friends and associates, are dedicated to memorialize him, viz., The Franklin D. Roosevelt Library and The Franklin D. Roosevelt Memorial Foundation, both of which are carried on by membership corporations organized under these very titles as their corporate names.

It is known that The Franklin D. Roosevelt Library, Inc., established in December, 1938, was done with the late Presi-

dent's consent and approval. The principal purpose of this membership corporation was to erect a library building at Hyde Park, New York, the home of the President, to preserve for posterity the President's papers and historical collections; and to accomplish these objectives more than 28,000 people contributed over $350,000 for the erection of the proposed library building, which was completed in 1941. It is also known that, shortly after the death of the late President, The Franklin D. Roosevelt Memorial Foundation, Inc., was incorporated with the sanction and approval of the executors, the family and friends of the late President who, of course, are peculiarly interested in preserving his name and fame and perpetuating his ideals.

The question of duplication of effort has been considered by justices of the New York Supreme Court in the past. In *In Re American War Relief Soc.* (34 N. Y. S. 2d 347, 348), Mr. Justice LOCKWOOD in refusing to approve a certificate of incorporation of American War Relief Soc., Inc., said: " The presently existing well-established agencies that are now engaged in accomplishing the purposes set forth in the certificate of the proposed corporation would seem to be adequate. Experience has taught that it is not more organizations or agencies that are needed, but more workers and support for the present efficient agencies * * *." Similarly, Mr. Justice HOOLEY in *In Re East Flatbush Victory Club* (42 N. Y. S. 2d 351, 352) declined to approve a proposed certificate of incorporation to aid soldiers and said: " The court declines to approve the proposed certificate of incorporation. The proposed purposes are laudable, being to help, aid and assist soldiers in need of money, food and clothing and to send to soldiers packages of food, cigarettes and books. This, of course, means the solicitation and collection of money. The present agencies to accomplish the laudable purposes above mentioned are adequate and sufficient. There is no need of additional organizations with the dignity of corporate charters. Let the proposed incorporators work with one of the present well established agencies. Duplication of effort with unnecessary organizations will only complicate the work and result in waste of the moneys collected."

It is felt that the existing membership corporations are adequate for the laudable purposes sought to be attained and there may be grave danger that the vicarious use of the late President's name would be misleading and deceptive. Although not used for the purpose of trade or business, so as to give rise to the claim of unfair competition in the usual sense, still the

unrestricted use of the name of the late President might well be regarded as unfair to the general public in the sense that it leads to confusion, creates the impression that such corporation has official sanction or approval and could readily result in unauthorized and uncontrolled solicitation of funds. See *Matter of General Von Steuben Bund, Inc.* (159 Misc. 231, 235) wherein Mr. Justice LEVY in refusing to approve a certificate of incorporation of "General Von Steuben Bund, Inc." said: "Considerable opportunity might arise, to the detriment of the existing Steuben Society, in confounding the mixed activities of the proposed corporation with those of the society of long existence. If the two names were connected with commercial enterprises, I have no doubt that the certificate would be refused for filing because of the possible confusion of names. I do not believe that a differentiation should be made because both societies happen to have as their object merely social and other non-profit purposes. As is said in *Society of the War of 1812* v. *Society of the War of 1812 in the State of New York* (46 App. Div. 568), the right of injunctive relief against the improper use of a corporate name which interferes with the plaintiff's business is not limited to business of a commercial or trading character. This principle is expressly approved in *Benevolent and Protective Order of Elks* v. *Improved Benevolent & Protective Order of Elks* (205 N. Y. 459)."

The name "Franklin Delano Roosevelt" is one that belongs to all the people, certainly of the United States, and, undoubtedly, of the world. No one will gainsay that his dedication and unstinted devotion to the public service for over a quarter of a century have brought his name into the public domain for use other than by his family and his personal representatives, but it clearly appears that to permit small scattered groups of individuals to appropriate the name to their own peculiar uses and purposes can only result in detracting from the dignity and profound respect which should be accorded to it because of its potent meaning to all Americans and, indeed, to the peoples of the entire world.

It is not thought that those who have submitted the application are ill-intentioned or may seek pecuniary gain by an attempted appropriation of the letters significant of the late President's name for their own purposes. However, the potentialities alluded to above which may arise from indiscriminate use clearly indicate that the present application should be denied and that similar applications should be closely scrutinized to avoid any such possibility.