J. Irwin Shapiro, J.
There has been submitted for approval, pursuant to section 10 of the Membership Corporations Law, a certificate of incorporation of “ Association for the Preservation of Freedom of Choice, Inc.” Among the purposes for which the sponsors desire to form this membership corporation are the following:
“ (a) To promote the right to individual freedom of choice and freedom of association, constituting the right of the individual to associate with only those persons with whom he desires to associate;
* * *
“(c) To assist in the elimination of barriers to individual freedom of choice and its exercise in specific instances, as well as preventing and guarding against deprivation of this right at large; ’ ’.
Coupled with these goals are the following additional purposes:
“ (b) To conduct itself, and to encourage, promote, and aid in scientific research into problems engendered by a multi-cultural society, into problems of intergroup relations, in areas of ethnic characteristics and patterns, and into the implications and effects of such problems on'freedom of choice and association, and to publish and to encourage, promote, aid, and assist in *1013 publication of the results of such research in suitable scholarly periodicals and other publications;
* * *
“(d) To find and promote the means through freedom of choice and association by which the numerous groups in our multicultural society can find their fullest development.”
In passing upon an application for the approval of a membership corporation, the duty of the court is not merely to see to it that the requirements of the statute have been met, but also to judicially determine whether the objects and purposes of the proposed corporation are lawful, in accord with public policy and not injurious to the community. (Matter of General Von Steuben Bund, 159 Misc. 231; Matter of Daughters of Israel Orphan Aid Soc., 125 Misc. 217; Matter of Stillwell Political Club, 109 N. Y. S. 2d 331; see, also, Matter of Deutsch-Amerikanischer Volksfest-Verein, 200 Pa. 143, cited with approval in Matter of Daughters of Israel Orphan Aid Soc., supra, pp. 219-220.)
The certificate of the proposed membership corporation speaks in terms of ‘1 individual freedom of choice and freedom of association” and also of assisting “in the elimination of barriers to individual freedom of choice. ’ ’ Instinct in these avowed purposes, however, is the negation of a whole series of fundamental and basic rights which are the warp and woof of the way of life vouchsafed to everyone by the United States Constitution and that of the State of New York. While individuals, as such, where not otherwise inhibited by law, may freely indulge in their prejudices and bigotries — or as the proposed certificate of incorporation puts it — in their “individual freedom of choice and freedom of association,” their purposes and intended practices should not be sanctioned by receiving the imprimatur of this court.
The national policy of equality before the law, as reflected in the Fifth and Fourteenth Amendments to the Federal Constitution, has been eloquently stated by the United States Supreme Court in Hirabayashi v. United States (320 U. S. 81, 100) when it said: ‘ ‘ Distinctions between citizens solely because of their ancestry are by their very nature odious to a free people whose institutions are founded upon the doctrine of equality.”
The Constitution of the State of New York declares in section 11 of article I thereof: “ No person shall be denied the equal protection of the laws of this state or any subdivision thereof. No person shall, because of race, color, creed or religion, be subjected to any discrimination in his civil rights by any other *1014 person or by any firm, corporation, or institution, or by the state or any agency or subdivision of the state. ’ ’
This declaration of policy has been reinforced by a whole series of State laws barring discrimination based on race or creed in places of public accommodation (Civil Eights Law, §§ 40, 41); in employment (Executive Law, § 291), or in education (Education Law, § 313) and the various laws barring discrimination in public and publicly assisted housing.
In view of the public policy of our State against discrimination because of race or creed, it is not surprising that the courts have ruled that “ Organizations for the purpose of perpetuating the division of the people into racial groups * * * thus retarding homogeneity should not be sanctioned.” (Matter of Catalonian Nationalist Club, 112 Misc. 207, 208; Matter of General Von Steuben Bund, 159 Misc. 231, supra.)
To this court it is clear that the use in the proposed charter of the Aesopian language: “ To promote the right to individual freedom of choice and freedom of association ” is but a cloak for the real purpose for which the corporation is sought to be organized, which is to say to certain segments of our population:
“ You can’t enter here.
You can’t ride here.
You can’t work here.
You can’t play here.
You can’t study here.
You can’t eat here.
You can’t drive here.
You can’t walk here.
You can’t worship here.”
A corporation thus recognized would be able to engage in “ indiscriminate imposition of inequalities, ’ ’. thereby frustrating the right to the ‘1 equal protection of the laws ’ ’ to which even the lowliest inhabitant of our land is entitled. (Shelley v. Kraemer, 334 U. S. 1, 22.)
No matter how grandiose the language, when the malevolent purpose is apparent, the law should not permit itself to be used to further such ends. ‘ ‘ Hatred is the vice of narrow souls; they feed it with all their littleness, and make it the pretext of base tyranny.” (Balzac.)
The application for approval of the proposed certificate of incorporation is denied.