J. Irwin Shapiro, J.
In 17 Misc 2d 1012, this court denied an application for a certificate of incorporation under Section 10 of the Membership Corporations Law of a group calling itself the ‘ ‘ Association for the Preservation of Freedom of Choice, Inc.”
The court is now in receipt of a letter from Alfred Avins, Esq., enclosing a memorandum of law in which it is stated “ The Association herewith requests reconsideration of the aforesaid opinion” and that “the certificate should be approved.”
No notice of motion or supporting affidavit is submitted in connection with said application. The letter and memorandum will be considered a motion for reconsideration.
In essence the memorandum argues that the sponsors of the application are entitled to freedom of association, that the State public policy against discrimination based on race, creed or 'color in certain fields of activity is no bar to approval, and that what is called “ freedom of choice ” is a value in which reasonable people may believe.
In support of the argument that the sponsors are entitled to freedom of association, counsel for the applicants cite Shelley v. Kraemer (334 U. S. 1), one of the very cases cited by this court in its opinion denying approval of the proposed certificate of incorporation. In addition, the applicants rely upon the decisions of the United States Supreme Court in National Assn. for Advancement of Colored People v. Alabama (357 U. S. 449) and in Sweezy v. New Hampshire (354 U. S. 234, 250), and an article by Joseph B. Robinson dealing with freedom of association which appeared in the Columbia Law Review (Yol. 58, p. 619).
The argument of the memorandum mistakes the issue. In no way was freedom of association or freedom of expression involved in the denial by this court of the application for approval of the certificate of incorporation. All that was denied to this group was the privilege of incorporation as a membership corporation. Certainly, the sponsors of the proposed membership corporation are completely free to associate for the purposes they spelled out in the proposed certificate. They are also free to speak out in support of racial and religious discrimination. But they may not compel the State to grant them, for these purposes, the benefits, and privileges of incorporation as a membership corporation.
Mr. Justice Levy in Matter of General Von Steuben Bund (159 Misc. 231, 234) — a decision which counsel for the applicant acknowledges “ is properly based ’’ — stated that “ Where, however, persons so banded together desire to secure the privilege *536 of a corporation, another situation is presented ’ ’. Mr. Justice Levy pointed out that in examining an application for incorporation at a membership corporation “it is the duty of the' justice to act more than as a ministerial officer in meeting the' requirements of the statute ” and he emphasized that though', incorporation under State law as a “ privilege ’ ’ be denied, such1, denial would in no' way prevent a number of individuals from carrying out whatever lawful propaganda activities they may-wish to engage in since no legal license is required for such a purpose.
This court has searched diligently and has found no precedent to support the implied claim of the applicants that the right to incorporate as a membership corporation is anything other than a privilege. The very framework of the Membership Corporations Law, which requires the approval of a Justice of the Supreme Court of the judicial district in which the office of the corporation is to be located, makes it clear that the Legislature intended to grant to the court discretion as to whether incorporation should be granted. As was pointed out by Mr. Justice Walsh in Matter of Stillwell Political Club (109 N. Y. S. 2d 331, 333): “Before approving a proposed membership corporation, it is the duty of the Court to be satisfied that the substance as well as the form does not violate the wholesome public policy and does not permit irresponsible or unequipped citizens to operate under a corporation charter which has been approved by the Court and will be accepted by the Secretary of State.”
There is a State public policy against discrimination. The memorandum of law submitted in support of the application acknowledges this fact. It fails, however, to deny or refute the conclusion of this court, made in its prior ruling, that the purpose of the proposed corporation is to undermine the established legal guarantees of equal treatment, regardless of race or creed. On the contrary, counsel seek to justify their intent to support racial and religious discrimination with an irrelevant argument; they point out that the public policy of the State of New York does not seek to eliminate ethnic differences in our population, that it actually promotes recognition of. the contributions made to our country’s welfare by various ethnic groups. The court considers this an irrelevant argument because it simply does not see any conflict in the two policies. The court believes it is fully possible to maintain equality of rights for all and, at the same time, cherish ethnic, differences and contributions.
*537 In seeking to undermine the authority of the Matter of Catalonian Nationalist Club (112 Misc. 207) counsel for the association cite the cases of Meyer v. Nebraska (262 U. S. 390) and Pierce v. Society of Sisters (268 U. S. 510). But these cases dealt with an effort by the State to impose conformity in language and in religion on all of its citizens. That is hardly the issue raised by the application in this case.
In my opinion denying the application for incorporation, and after discussing the purposes for which I believed incorporation was really sought, I said: “ No matter how grandiose the language, when the malevolent purpose is apparent, the law should not permit itself to be used to further such ends.” (17 Misc 2d 1012, 1014.)
Even if it could be fairly contended that the proposed certificate of incorporation merely left to inference what this court called the “malevolent purpose” of the incorporators, the present memorandum of law clearly shows the face behind the mask and makes the conclusion heretofore drawn by the court Inescapable.
In the memorandum we find the statement that ‘ ‘ the Association intends to develop and present a point of view in the field of intergroup and race relations.” What that point of view is, among other things, may be gleaned from their contention that there is nothing wrong in ‘ ‘ merely declining to rent an .apartment ” to one by reason of his race, or his creed or his color.
In my opinion I stated that there is a “ public policy of our [State against discrimination because of race or creed.” (17 Misc 2d 1012, 1014.) The memorandum of law submitted on '.behalf of the petitioners disagrees with that statement and contends ‘ ‘ that not all discrimination based on race or creed is ■against public policy, but only such discrimination as the legislature finds to be unreasonable. And we submit that reasonable people may differ as to what constitutes ‘ reasonable ’ discrimination. ’ ’
The memorandum then goes on to say that “ While a majority of our citizens may consider anti-discrimination legislation to be wise today, at a future time this view may give way to other feelings.” It then concludes that: “If the proposals of this association in the intergroup relations field have merit, they will be accepted in the market-place of ideas and bear fruit; otherwise, they will wither on the vine and die. ’ ’
Their contention that their views ‘ ‘ will wither on the vine and die ” if they are not accepted in the market place of public opinion is true. It is for that reason that this Nation, as a leader among all others, has incorporated in its Constitution *538 provisions guaranteeing the right of free speech, even if that speech be disagreeable to most of us.
We here cherish the immortal words of Voltaire, when he said: ‘ ‘ I disapprove of what you say, but I will defend to the’ death your right to say it.”
So far as the proposed incorporators as individuals are concerned, they may, of course, “indulge in their prejudices and bigotries ” but “ their purposes and intended practices should not be sanctioned by receiving the imprimatur of this court.” (See this court’s original opinion in 17 Misc 2d 1012, 1013.)
Our system of government can only be maintained by the free and untrammeled collision of ideas, but when those ideas run counter to the mores or policies of our laws, no group should be permitted to organize in corporate form with the sanction of the State to espouse such ideas. It could hardly be contended, for instance, that on the theory that otherwise they would be denied individual freedom of choice or freedom of expression, the incorporators here could compel the court to approve the organization of a corporation which sought as its purpose to propagandize for the repeal of the laws against bigamy. Yet, if the proponents’ contention here is correct, that despite the public policy of our State and Nation to the contrary of what they seek to espouse, this court has no choice and must grant them a charter, it would have no choice in the bigamy case either. Such proponents would have a perfect right as individuals to agitate for the abolition or repeal of the laws against bigamy, but they could not as a matter of right demand incorporation for that purpose. The applicants here are in no better position.
In the year 1903 there was inscribed on a bronze tablet placed in the pedestal of the Statue of Liberty:
‘ ‘ Give me your tired, your poor,
Your huddled masses yearning to breathe free,
The wretched refuse of your teeming shore.
Send these, the homeless, tempest-tost to me.
I lift my lamp beside the golden door. ’ ’
No distinction is there made as to whether the poor and huddled masses, yearning for freedom, are white or black or yellow. All human souls are included.
In this year of 1959, with the sanction of a majority of our elected representatives, and' with the approval of the President of the United States, we have seen admitted into our Union a State with an Oriental majority. Surely now is no time to *539 disregard the plea engraved on the Liberty Bell: “Proclaim liberty throughout the land unto all the inhabitants thereof.”
All Bae inhabitants of our land are Hod’s children, and all are entitled to equality of treatment, without discrimination, and this court does not conceive it to be his duty to certify and approve for incorporation an organization which by its every intendment negatives those basic principles of our land.
There is no constitutional or statutory requirement that a “ hate group ” be given a corporate charter.
The application for a rehearing is granted, and, upon such rehearing, the. application for approval of the certificate of incorporation is denied on the merits and in the exercise of discretion.
If the proponents desire to appeal from this determination they may submit an order for entry thereon. Such order shall recite, as part of the papers considered by this court, the letter of counsel and the memorandum of law submitted in connection with the application for reconsideration.