THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* NORBERTO DIAZ, Appellant, et al., Defendants.

First Department, March 15, 1960.

*Oscar Gonzalez-Suarez,* attorney (*Morris M. Goldknopf, Frank A. Ortiz* and *Efrain G. Sanchez* with him on the brief), for appellant.

*Irving Anolik* of counsel (*Daniel V. Sullivan, District Attorney,* attorney), for respondent.

M. M. FRANK, J. On this appeal the prime specification of error urged as requiring a reversal of the judgment of conviction is that the defendant's constitutional right to waive a trial by jury and to be tried by the court alone was violated.

The facts upon which the constitutional problem is predicated are undisputed. The question we must determine is whether the Constitution grants an absolute right to waive a jury trial to every defendant in a criminal case charging a felony, save a capital one. If there is a mandatory direction, we must reverse. On the other hand, if the provision is merely permissive and confers even the slightest modicum of discretion on the Trial Judge, then the judgment should be affirmed, if there is no reversible error otherwise.

The problem presented is one of first impression in an appellate court in this State, although the precise issue has been considered at the trial level (see *People* v. *Masucci,* 21 Misc 2d 25)

and in an article 78 proceeding (see *Matter of Scott* v. *McCaffrey*, 12 Misc 2d 671; joint application for prohibition and mandamus).

The defendant, Norberto Diaz, appeals from a judgment of conviction of the crime of manslaughter, second degree, on two separate counts predicated on the deaths of two individuals, Venancio Velasquez and Jorge Valladaris, and on a count of conspiracy as well. On each manslaughter count he was sentenced to imprisonment in State prison for a term of not less than 7½ and not more than 15 years, to run concurrently. No sentence was imposed on the conviction for conspiracy.

Diaz and three others were indicted upon charges of manslaughter, first degree (two counts), manslaughter, second degree (two counts), and conspiracy. The codefendant Bellido was acquitted; Francisco Padin and Pedro Rodriguez were convicted and sentenced. Their appeals were not perfected and were subsequently dismissed, so that here we are concerned only with the defendant Diaz.

Briefly, the facts as charged and as developed on the trial established that, with full knowledge of its deadly nature, Padin stole approximately 30 gallons of wood alcohol from the premises of his employer, a chemical firm in New Jersey, which he sold to the defendant Rodriguez. The theft occurred at the behest and suggestion of Rodriguez, who told Padin that the alcohol was to be distributed to parties in New York for the purpose of human consumption. Rodriguez, in turn, sold some of the wood alcohol to Diaz, the owner of a grocery, who tested a sample by igniting a small quantity of the fluid. With this test as his sole criterion, he thereupon declared it to be "good" and took delivery. Diaz mixed the poisonous fluid with fruit juices and cola extracts, bottled the concoctions, called "King Kong" or "Sneaky Pete," and sold them to customers including Valladores and Velasquez, both of whom died from the effects of wood alcohol poisoning.

The proof offered and received against Diaz, in addition to other evidence, included incriminating admissions he had made to some police officers and a stenographically recorded statement taken by an Assistant District Attorney. Diaz did not take the stand to refute or explain the admissions and statements, or to testify in his defense in any other respect. In sum, the verdict was fully justified by the evidence.

At the opening of the trial, Diaz moved for a nonjury trial, in the form and manner required by the New York State Constitution (art. I, § 2), through his counsel who tendered a written waiver and stated that Diaz "is prepared to sign a waiver consenting to a trial by this Court without a jury." There

can be no question that the application was knowledgeably made, with full consciousness of all possible consequences, through experienced counsel of the defendant's own choosing. The other defendants did not join in the application or offer similar waivers. In denying the motion, the learned County Judge ruled that the constitutional provision permitted the granting or the denial of the motion as a matter of judicial discretion. After taking an appropriate exception, counsel then moved "to sever * * * and have the defendant, Norberto Diaz, tried alone before this Court without a jury."

Insofar as a severance is concerned, the disposition of such an application clearly rests within the sound discretion of the court (Code Crim. Pro., § 391; *People* v. *Fisher,* 249 N. Y. 419, 424). Under the circumstances, the trial court's determination was an appropriate exercise of judicial discretion and will not be disturbed.

The applicable section of the New York State Constitution (art. I, § 2)* resulted from an amendment adopted at the 1938 Constitutional Convention and approved by the people at the general election on November 8, 1938. No legislative implementation has been enacted since that time, probably because the Court of Appeals decided that the provision is self-executing (*People* v. *Carroll,* 3 N Y 2d 686). We shall later discuss the substantially identical provision of the Federal Rules of Criminal Procedure.*

Before the turn of the century the Federal courts and those in most of the States required that the trial of a felony be held

---

* "§ 2. [Trial by jury; how waived.]

Trial by jury in all cases in which it has heretofore been guaranteed by constitutional provision shall remain inviolate forever; but a jury trial may be waived by the parties in all civil cases in the manner to be prescribed by law. The legislature may provide, however, by law, that a verdict may be rendered by not less than five-sixths of the jury in any civil case. A jury trial may be waived by the defendant in all criminal cases, except those in which the crime charged may be punishable by death, by a written instrument signed by the defendant in person in open court before *and with the approval of a judge or justice* of a court having jurisdiction to try the offense. The legislature may enact laws, not inconsistent herewith, governing the form, content, manner and time of presentation of the instrument effectuating such waiver." (Emphasis supplied.)

* Compare: Federal Rules of Criminal Procedure, rule 23 "(a) Trial by Jury. Cases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing *with the approval of the court* and the consent of the government." (Emphasis supplied.)

Note the similarity of phrasing of the italicized portions of both provisions. The only verbal distinction is the use of "Judge or Justice of a court" in one and the word "court" in the other.

before a common-law jury of 12 and forbade the waiver of such a jury.** Thereafter, the National Government as well as many States permitted waiver of trial by jury in a criminal case. In some States the right so accorded a defendant is absolute and unqualified. In others, the consent of the prosecutor, the approval of the court, or both are required. Whether treated as a privilege or a right, in some jurisdictions it was accomplished by means of a constitutional provision or by statute, in some by judicial decision, and in others, as in the Federal system, by rules of procedure. (See Appendix at the foot of this opinion.)

In some States, as well as under the Federal Rules of Procedure, the consent of the prosecutor to the application for a jury waiver is a prerequisite. With that requirement we have no concern, for it is not mandated in this State. With differences in phraseology in the various enactments disregarded for the moment, there is no doubt that there are divergent judicial opinions as to whether an application for a jury waiver must be granted as an absolute and unqualified right accorded a defendant, or whether it is subject to denial in the exercise of judicial discretion.*

In this State a defendant charged with a felony was not permitted to waive a trial by jury before 1937 and it is unquestioned that the inflexible rule was crystallized by the Court of Appeals a century ago (*Cancemi* v. *People,* 18 N. Y. 128, 135–138). In that case, in open court and under the guidance and advice of counsel, the defendant, on trial charged with murder, consented to the discharge of a juror and the continuation of the trial by 11 jurors. On appeal, following his conviction, the main issue raised the impropriety of the proceedings. In reversing the judgment, the Court of Appeals held, in effect, that, in the absence of a constitutional provision, even the Legislature could not dispense with a common-law jury.

---

** One of the notable exceptions existed in Maryland, where during the colonial period criminal trials had been conducted by the courts alone on waivers. The procedure was confirmed by a legislative act in 1809. For an interesting discussion of the English and early American attitudes toward nonjury trials see The Historical Development of Waiver of Jury Trials in Criminal Cases by Dean Erwin N. Griswold of Harvard, 20 Va. L. Rev., p. 655 (1934); see, also, *People* v. *Cosmo,* 205 N. Y. 91.

* See Oppenheim's Waiver of Trial by Jury in Criminal Cases, 25 Mich. L. R. 695 (1927), which discusses the philosophical aspects of the "public policy rule" enunciated by Cancemi. Has the State a Right to Trial by Jury in Criminal Cases? 18 A. B. A. J. 226. Abbott Criminal Trial Practice (4th ed.), ch. 14, p. 313. 5 Wharton's, Criminal Law and Procedure, ch. 75, §§ 1947–1950. Busch, Law and Tactics in Jury Trials, §§ 44–49.

The court said (p. 138): "If a deficiency of one juror might be waived, there appears to be no good reason why a deficiency of eleven might not be; and it is difficult to say why, upon the same principle, the entire panel might not be dispensed with, and the trial committed to the court alone."

It is worth noting that in *People* v. *Cosmo* (205 N. Y. 91), decided 45 years later, the Court of Appeals was careful to distinguish *Cancemi,* undoubtedly to avoid the inference that it was being overruled.

In 1933, probably to overcome the rigidity of the *Cancemi* rule, the Code of Criminal Procedure (§ 358-a) was amended to permit the selection of alternate jurors, in order to insure a common-law jury of 12 and thus avoid a mistrial if a juror became incapacitated.

There can be no doubt that the constitutional amendment under consideration here was deemed essential.[*]  While there is no need to discuss the reasoning upon which the Court of Appeals reached its conclusion in *Cancemi* and established the rule prohibiting the waiver of even one juror, it is a fair inference from cases decided in other jurisdictions that the holding in *Cancemi* had a profound effect upon legal thinking and caused some other States which favored jury waivers to conclude that the change, to be effective, required constitutional or statutory provision therefor.  Indeed, in *Patton* v. *United States* (281 U. S. 276, 302) wherein the Supreme Court sustained a conviction following a verdict by eleven jurors after the twelfth had been excused by consent for illness, the court, in discarding the *Cancemi* rule in respect to Federal cases, indicated that *Cancemi* influenced many other jurisdictions to adopt similar views.

In *Matter of Scott* v. *McCaffrey* (12 Misc 2d 671, *supra,* discussed in 59 Col. L. R. 815) it was held that the constitutional provision under consideration conferred an inviolate right to a waiver of jury by a defendant in a criminal case, subject only to his awareness of the consequences of the step taken.  The court stated that the phrase "with the approval of a judge" merely means that "the only function of the trial Judge" is to ascertain "that the defendant is fully aware of the nature and consequence of his request".  In reaching his conclusion, the distinguished jurist relied, in part, upon his analysis of

[*] Second Annual Report of N. Y. Judicial Council, 1936, p. 99.  The report is also significant because the council recommended that the right be extended to a defendant without requiring the consent of either the prosecutor or the court.  The suggestion was not adopted.

the discussions at the constitutional convention. We do not draw the same inferences or conclusions that he did.

A study of the chronological steps leading to the adoption of the amendment under consideration here confirms our conclusions. The first provision for a waiver of jury trial appeared in the 1894 Constitution of the State, and was confined to civil actions.* As early as 1901 bills were introduced from time to time to change or amend the section to include a waiver of a jury in a criminal case. None of the proposed legislation was passed but an increasing number of bills were introduced at successive sessions of the Legislature, especially during the period from 1920 to 1933. Thereafter the Legislature adopted a constitutional amendment which was approved by the people at the general election in November, 1935. It added a single sentence, "The legislature may provide, however, by law, that a verdict may be rendered by not less than five-sixths of the jurymen constituting a jury in any civil case." Although there were numerous attempts during the same legislative sessions to make indictable offenses subject to waiver of jury, the proposals were all rejected. However, those interested did not abandon their efforts and, as a result, the State Legislature passed another proposed amendment for submission to the people. That amendment* was ratified by the voters at the general election in November, 1937.

It is important to note that the amendment extended the right to waive a jury to defendants in criminal cases without requiring the "approval of the judge". Thus the difference between the amendment adopted in 1937 and the one proposed by the 1938 Constitutional Convention is marked and should not be treated casually. The latter, which is now controlling, and is self-executing (*People* v. *Carroll*, 3 N Y 2d 686, *supra*), added important safeguards not contained in the former. If the intention was to grant an absolute right to a defendant to waive, not subject to judicial discretion, but merely to

---

* Section 2, The trial by jury in all cases in which it has been heretofore used shall remain inviolate forever; but a jury trial may be waived by the parties in all civil cases in the manner to be prescribed by law. (See [1938] New York State Constitutional Convention Report, Vol. II, part. IV, p. 1.)

* The amendment read as follows:

"The trial by jury in all cases in which it has been heretofore used shall remain inviolate forever; but a jury trial may be waived in the manner to be prescribed by law by the parties in all civil cases *and by the defendant in all criminal cases*, except those in which the crime charged may be punishable by death. The legislature may provide, however, by law, that a verdict may be rendered by not less than five-sixths of the jurymen constituting a jury in any civil case." (Emphasis supplied.)

make certain that the waiver would be executed with full awareness of its consequences, then the 1937 amendment would have sufficed, possibly with supplemental phrases such as ''in open court before a judge,'' and, ''with the advice of counsel.''

The convention, however, did not so view it and the words ''with the approval of a judge'' thus gain added significance. A perusal of the convention proceedings discloses that there was no specific expression of the intention of the framers of the proposed amendment with respect to the phrase under discussion. Throughout the debates no objection was voiced to the use of the term. The proposal that the words ''after consultation with counsel'' be added was voted down. A fair reading of the report of the judiciary committee justifies the conclusion that the convention placed such strong reliance upon the requirement for court approval of a waiver that it rejected the proposal as unnecessary.

At no time did anyone express the opinion that waiver of trial by jury was an absolute right being extended to every defendant in a felony case, and our conclusion is reasonably inferable from a significant comment by Judge Sears, chairman of the judiciary committee which drafted the amendment.[*]

If the convention delegates intended to limit the words in the fashion suggested by the learned Justice at Special Term in *Matter of Scott* v. *McCaffrey* (12 Misc 2d 671, *supra*), some other expression would have been more suitable. For example, they might have said, '' by a written instrument signed in open court under the supervision of the judge.''

There is significance in the choice of the word ''approval.''[**] As generally understood in other branches of the law, it is

---

[*] ''Mr. Sears: Well, of course, in that case there is no protection now. As the Constitution now stands, that would be perfectly good and you would have here these protections; The waiver must be in writing — that is not necessary now; the waiver must be made in open court — that is not necessary now; the waiver must be made before the judge who has jurisdiction to try the case — that is not necessary now; and the waiver must be made with the approval of the judge himself.''

Following this statement some colloquy ensued as to the mechanics of the procedure to be followed when a defendant signs a waiver.

''Mr. Sears: That cannot be done now. It has to be brought to the attention of the court.

''Mr. Garey: It is in front of the court.

''Mr. Sears: The court must approve of it.''

(Revised Record, New York State Constitutional Convention 1938, Vol. II, pp. 1279–1280.)

[**] Ballentine (2d ed.) in discussing ''approve'' indicates that it denotes ''To confirm, ratify, sanction, or consent to, some act or thing done by another.''

not a perfunctory or ministerial act but when used with reference to a court or judge bespeaks a choice between acceptance or rejection. (See *Matter of Broderick* v. *City of New York*, 295 N. Y. 363, 371.) For example, there is no doubt that the requirement in the Membership Corporations Law (§ 10) that the certificate have the approval of a Justice of the Supreme Court imposes more than a ministerial duty, and the act of approval or disapproval calls for the exercise of judicial discretion.* In many statutory provisions applying to matters such as infants' settlements, bonds supplied for various purposes, transfers or releases of funds of wards of the court, to mention but a few, the required approval of a court or a judge always implies judicial discretion.

We need not belabor the point, for there is support for our view more specifically referable to the problem at hand. We therefore direct our attention to the Federal rule, since its key phrase, insofar as it concerns us, is substantially a duplicate of the one in our constitutional amendment and the Federal court decisions lend support to our determination.

The Federal Rules of Criminal Procedure (rule 23, subd. [a]; U. S. Code, tit. 18) provide for a jury in a criminal prosecution "unless the defendant waives a jury trial in writing with the approval of the court". The phrase was considered in *Mason* v. *United States* (250 F. 2d 704 [10th Cir.]). There the defendant's application for a jury waiver was rejected by the trial court. It was argued in the Court of Appeals that the defendant was deprived of his constitutional rights by the refusal of the Trial Judge to grant his application. In affirming the conviction the court held that the trial court was vested with broad discretion to decide whether to grant or deny the application, and that the right to waive a jury is not absolute but requires the approval of the court.**

---

* See *Matter of Boy Explorers of America*, 21 Misc 2d 114; *Matter of German Jewish Children's Aid*, 151 Misc. 834; *Matter of General Von Steuben Bund*, 159 Misc. 231; *Matter of Daughters of Israel Orphan Aid Soc.*, 125 Misc. 217; *Matter of United Winograder Medical Center in Israel*, 21 Misc 2d 27; *Matter of Council of Orthodox Rabbis*, 10 Misc 2d 62.

** See, also, *Patton* v. *United States*, 281 U. S. 276, 312.

In *Mason* v. *United States* the opinion states (p. 706): "the philosophy of the law is well established that the trial court is vested with sound discretion in determining whether a jury trial should or should not be had, notwithstanding the accused's request that he be tried to the court. Such is the sense of Rule 23(a)". After quoting the rule, the court continued, "Under this rule, the right to waive a jury and be tried to the court is not an absolute one; it requires the approval of the court". It quotes from *Patton* v. *United States*, which contains this observation, "before any waiver can become effective * * * the sanction of the court must be had, *in addition to* the express and intelligent consent of the defendant." (P. 706, emphasis supplied.)

While not binding on us, it is useful to turn again to the studies of the New York Judicial Council, the body which, in the first instance, proposed the amendment to the Constitution. In 1939 (Fifth Annual Report, pp. 37–38), the Council, in suggesting enabling legislation, interpreted the reference to "approval" in the constitutional amendment as connoting a requirement for the consent of the court. It stated that "It will be observed that the study, originally written in May 1938, suggests that the jury waiver should not require consent of the court or of the prosecutor. Since the foregoing 1938 amendment to the Constitution, however, requires consent of the court to the jury waiver, the Council has drafted the statute in accordance therewith. Nor has the Council passed upon that portion of the study which deals with consent of the court as a matter of principle." In the explanatory notes (pp. 159–174), the Council, after analyzing the requirements for consents to jury waivers in 22 States and the Federal rules, clearly indicated (p. 167) that in its opinion "both the history of the constitutional guarantee and the weight of the applicable policy considerations favor conferring on the defendant alone an untrammeled privilege to waive jury trial if the matter were free from constitutional mandate. In view of the position taken by the Constitutional Convention of 1938, and approved by the people, however, the consent of the court is now required and is accordingly presented in the draft statute. It has not been deemed necessary or desirable to include any requirement of consent by the district attorney." Parenthetically it is worth noting that the membership of the Judicial Council, then as now, included the Chief Judge of the Court of Appeals, the Presiding Justices of the four judicial departments, as well as the leaders of the Legislature. In 1942 (Eighth Annual Report, p. 59), in recommending statutory implementation, principally treating with procedural clarification, the Council suggested that the court be required to advise a defendant of his privilege to waive and again directed attention to its Fifth Annual Report.

We can reach but one conclusion on the prime issue raised on appeal. We hold that, by the terms of section 2 of article I of the New York State Constitution, the trial court, in the exercise of its judicial discretion, is empowered to grant or deny an application for a jury waiver in any criminal case charging a felony other than a capital one. As to this proposition, the court is unanimous.

We now turn to the question as to whether the trial court, in denying Diaz' application for a nonjury trial, properly exercised its discretion. In that regard, perhaps some reference

should be made to the meaning of the term " judicial discretion ". As with so many other terms in the law, no precise definition has ever been formulated. Coke said it meant " to see what would be just acording to the laws in the premises." Mansfield defined it thus: " discretion when applied to a court of justice, means sound discretion, guided by law. It must be governed by rule, not humor. It must not be arbitrary, vague and fanciful; but regular." (*Rex* v. *Wilkes,* 4 Burrows 2527, 2539.)

The courts in this State have held that " Judicial discretion is well defined in *Tripp* v. *Cook* (26 Wend. 152) as follows: ' Judicial discretion is a phrase of great latitude; but it never means the arbitrary will of the judge. It is always (as Chief Justice MARSHALL defined it) " A legal discretion to be exercised in discerning the course prescribed by law; when that is discerned, it is the duty of courts to follow it. It is to be exercised, not to give effect to the will of the judge, but to that of the law." ' " (*McGurty* v. *Delaware, Lackawanna & Western R. R. Co.,* 172 App. Div. 46, 47.)

Undoubtedly there is a distinction between a trial involving multiple defendants and one with a single defendant. In the latter situation, a defendant is entitled, at his option, to a trial at the bar of a court alone, unless the circumstances clearly indicate that it would not serve the ends of justice. A judge may not deny the application, for example, because it places a greater responsibility upon him, or to avoid the performance of a disagreeable duty. However, when multiple defendants are jointly tried, it is not infrequent that problems arise which are foreign to and completely absent in a case involving one defendant. It may, therefore, be proper to apply the rule governing the judicial exercise of discretion on a motion for a severance to an application for a waiver by one of several jointly indicted defendants. With respect to an application for a severance, an appellate court will neither lightly overrule the trial court in its exercise of judicial discretion nor substitute its own judgment, unless it appears that there has been a clear abuse of the discretion vested in the court of original jurisdiction (*People* v. *Doran,* 246 N. Y. 409, 424; *People* v. *Fisher,* 249 N. Y. 419, *supra; People* v. *Schwarz,* 10 A D 2d 17). That should be the rule, absent special circumstances, with respect to jury waivers.

Since we are agreed that the trial court is vested with discretion to grant or deny an application for waiver of a jury, what considerations should enter into its exercise? Is it sufficient that one of several defendants knowledgeably tenders a waiver.

without more? We think not, for if it were, then a Trial Judge would merely be performing a ministerial function. It necessarily follows that something in addition to tender of a waiver should be shown to impel the court to approve a nonjury trial.

Diaz has made no claim that he was prejudiced by a joint trial, or that he could not receive a fair and impartial verdict from a jury. Not a single reason was urged upon the trial court to justify the granting of a jury waiver in the proper exercise of judicial discretion. From the record, it is apparent that the defendant sought to obtain a nonjury trial as a matter of right, not as a petition addressed to the discretion of the court. Under the circumstances, it would have been an abuse of judicial discretion to grant a nonjury trial to Diaz without waivers being offered by his codefendants in a case where all those convicted were intimately involved in the commissions of the manslaughters, as well as in the conspiracy alleged in the indictment. There is not the slightest suggestion by Diaz that the trial court abused its discretion in denying his application. At the trial and on this appeal, the alleged error has been predicated on the claim that the Judge was without power to deny a nonjury trial.

Retrospectively, it is quite clear that the jury determined the guilt or innocence of each defendant with meticulous care and discrimination. They convicted three, including Diaz, and acquitted Bellido. There can be no question that the conviction of Diaz was fully justified upon the facts. It is inconceivable that a Judge, acting as the trier of the facts, could have reached a contrary conclusion. The massive array of proof adduced against Diaz, however, did not deter the jury from returning a verdict of not guilty as to Bellido. It is a fair inference that the distinction was drawn because the evidence established that Bellido was merely Diaz' part-time employee or helper, an underling who dispensed some of the lethal liquor at the direction of Diaz.

As heretofore stated, it is the Constitution, not a legislative fiat, which, in unequivocal terms, places the power to approve or disapprove an application for a jury waiver in the trial court. The Legislature has not as yet seen fit to implement the constitutional provision and one may assume that the reason lies in the lack of any need therefor. The constitutional amendment imposes no restriction upon the judicial exercise of discretion. Courts are not authorized, therefore, to adopt a self-imposed restriction exceeding the dictates of sound judicial discretion exercised with due consideration for the rights of

the defendant, the people of the State, and the interests of justice. The privilege accorded is intended as a shield for those eligible to use it, not as a sword to defeat the ends of justice. So, for example, it is quite appropriate to grant a waiver against the possible infection of a jury by public outrage and clamor in the midst of a wave of crime or other inflammatory stimuli, and thus afford a defendant a fair and impartial trial free from prejudice.

Of course, it is scarcely necessary to state that the convenience of the prosecutor or the court can never be a controlling factor. By the same token, a defendant has no constitutional right to a nonjury trial for the purpose of impeding justice and subverting its orderly administration. There is profound truth in Judge CARDOZO's celebrated precept that "justice, though due the accused, is due to the accuser also."

In *Matter of Scott* v. *McCaffrey* (12 Misc 2d 671, *supra*), it was proposed that since the trial court was required to grant an application for a waiver, even if a severence was denied, the proper method would be to hold a joint trial and at the close thereof remove from the jury's consideration the guilt or innocence of the defendant whose waiver was approved. While we find the suggestion intriguing and have given the analysis made by a learned Justice careful and serious study, we can neither adopt the suggestion nor apply it to this case. That method of conducting a trial would create a cumbersome proceeding, might well distract the jury from the main issue, and might result in a miscarriage of justice. What would the Trial Judge tell the jurors in explanation? Would he say that the defendant was eliminated from their consideration, and nothing more, thus leaving the impression that he pleaded guilty or was discharged? Should the Judge explain that the defendant's guilt or innocence required decision by the Judge alone and thus cause the jury to speculate as to the outcome, in a possible desire on their part to conform to the court's judgment on the facts? All trial judges are familiar with the differences in the development of proof in jury and nonjury trials. It is neither uncommon nor inappropriate for the judge in a nonjury trial to examine a witness carefully, for he seeks answers to questions which arise in his mind to assist him in resolving the dispute. Some of these questions may have significant connotations. However, if multiple defendants, some of whom have waived a jury while one or more have not, are to be jointly tried, a different situation would obtain. The Trial Judge would be under a restraint not present in a non-

jury trial. Extended questioning of witnesses by the court is frequently given exaggerated importance by jurors and may result in reversible error (see *People* v. *Mendes,* 3 N Y 2d 120; *People* v. *Robins,* 242 App. Div. 516, 520; *People* v. *Friedt,* 280 App. Div. 836; *People* v. *Adler,* 274 App. Div. 820). What then would serve as an appropriate course of judicial conduct? Does the Trial Judge endeavor to elicit testimony that may satisfy him in resolving the issue submitted to him solely, at the risk of prejudicing the rights of the defendants whose guilt or innocence must be determined by the jury, or does he abandon his responsibility to the defendants whose fate he must decide, in order to insure a proper trial for the others? Certainly, a Trial Judge who, in the exercise of judicial discretion, declines to be placed in such an anomalous position should not be charged with an abuse of discretion because the trial might well deprive one or another of several defendants of an untainted determination. Moreover, due regard for the rights of each defendant, under the conditions outlined, would compel the trial court to grant a severance, and thus enable the accused to obtain by indirection that which would be properly denied otherwise. These are but a few of the problems that would be created and might lead to improper or incongruous verdicts.

We do not believe that an analogy can be drawn between the trial of an indictable offense and a civil action involving third parties for the issues imposing liability on such parties are usually not the same as in the main action. That is not true in indictable offenses, and, in addition, the dissimilarity in the burden of proof and other mandated procedures, such as confrontation, precludes comparison. Moreover, in civil actions, whether there is one or more plaintiffs or defendants, a jury demand by any party, absent a third-party action, results in a jury trial for all (Civ. Prac. Act, § 426; *Schnur* v. *Gajewski,* 207 Misc. 637).

We have considered the other alleged errors and find them without merit or so inconsequential that no substantial rights of this defendant were affected thereby (Code Crim. Pro., § 542). In sum, we are satisfied that the proof of the guilt of this defendant was established beyond a reasonable doubt in a trial fairly conducted. Moreover, the trial court, in the exercise of judicial discretion, was correct in denying the application for a nonjury trial and for a severance.

The judgment should be affirmed.

## APPENDIX

*Arkansas*: (1874) Constitutional provision requires statutory implementation. Statute limited to misdemeanors.

*California*: (1928) Constitutional amendment. Consent of the prosecution and the defendant is mandated. *People* v. *Benjamin*, 140 Cal. App. 2d 703; cf. *People* v. *Eubanks*, 7 Cal. App. 2d 588.

*Connecticut*: (1921) Statute.

*Georgia*: Code. The court may deny a waiver of trial by jury. *Palmer* v. *State*, 195 Ga. 661.

*Illinois*: (1941) Code. Court may not deny waiver, *People* v. *Spegal*, 5 Ill. 2d 211, overruling *People* v. *Scornavache*, 347 Ill. 403.

*Indiana*: (1926) Statute. The trial court may deny a demand for a nonjury trial. *Mitchel* v. *State*, 233 Ind. 16 [1953]; *Alldredge* v. *State*, 156 N. E. 2d 888 [1959].

*Kansas*: The court may reject defendant's waiver of a jury trial. *State* v. *Ricks*, 173 Kansas 660.

*Maryland*: (1867) Constitution. (1924) Statute.

*Massachusetts*: The court has a right to reject the waiver filed. *Commonwealth* v. *Millen*, 289 Mass. 441; cf. *Commonwealth* v. *Rowe*, 257 Mass. 172; 48 A. L. R. 762, see annotation for earlier rule in various States.

*Michigan*: (1927) Statute. The court may disregard a jury waiver in a criminal case. *City of Grand Rapids* v. *Bateman*, 93 Mich. 135.

*New Mexico*: Before any waiver can become effective, the sanction of the court must be had. *State* v. *Shroyer*, 49 N. M. 196 (1945).

*North Carolina*: (1876) Constitution.

*Minnesota*: (1857) Constitution provides for a statute. No statute.

*Ohio*: (1930) Statute. The court may refuse to honor a jury waiver. *Ickes* v. *State*, 63 Ohio St. 549 [1900].

*Oklahoma*: (1907) Self-executing constitutional provision.

*Pennsylvania*: No waiver permissible in absence of statute. See *Commonwealth* v. *Hall*, 291 Pa. 341; 58 A. L. R. 1023 and Annotations.

*Virginia*: Statute. Waiver requires consent of the prosecutor and of the court; see *Dixon* v. *Commonwealth*, 161 Va. 1098; *Boaze* v. *Commonwealth*, 165 Va. 786.

*Washington*: (1929) Statute.

*Wisconsin*: (1848) Constitution providing for statutory implementation; (1929) Statute.

The Judicial Council Report (1936), in a footnote, states that Alabama, Nebraska, New Hampshire and Tennessee, among others, permit jury waivers in certain instances by judicial decision.

BOTEIN, P. J. (dissenting). Of course, the power under some circumstances to disapprove waiver of a jury trial by a defendant must be a corollary of the power to approve; otherwise the latter is a mere mandate to rubber-stamp approval. I cannot acquiesce in the breadth of the majority holding, however, as to the scope of the discretion to approve or disapprove lodged with the Trial Judge, and the manner in which it is to be exercised. Nor can I, therefore, agree that if the constitutional provision confers even the slightest modicum of discretion on the Trial Judge, the judgment must be affirmed.

In the exercise of such discretionary power the essential element to be taken into consideration is the interest of the individual defendant, and not the convenience of the court and the prosecutor.* While the overriding interest of the State must inevitably be the protection of society, the rights of individual members of that society must likewise be protected when they are accused of a crime and come into conflict with the machinery of the State.** The comments made during the 1938 New York State Constitutional Convention by Judge SEARS, which are quoted in a footnote of the majority opinion, were preceded by the following colloquies, which indicate the delegates' concern for the protection of the defendant.

Judge SEARS said as follows: " The proposal is a very simple one. It is intended to protect the rights of the defendant, to assure him by the necessity for an approval by the judge of full opportunity to understand what he is doing." (New York State Constitutional Convention, 1938, Revised Record, Vol. II, p. 1274.) A little later, in response to an inquiry by delegate EDWARD WEINFELD, now a distinguished United States District Judge, who had recommended that the words " after consultation with counsel " (p. 1276) be added for the protection of the defendant, Judge SEARS said: " We thought that that was sufficiently covered by requiring the approval of the judge, because we believe that you could rely upon the judge of the very court which had jurisdiction to try the case to see that the defendant was well advised * * *. All I can say is, it was carefully considered, and I believe that the protection which we provide in the requirement that it should be in open court, in the presence of the judge and with the judge's approval, which was not included, I think, in your amendment, that with those protections we had nothing to fear for such a defendant. That was our view " (*ibid.*, pp. 1276–1277).

The Constitutional Convention evidently placed its faith in the judge as the courtroom personality best calculated to make certain that a defendant seeking to waive trial by jury comprehends all the consequences of his decision. I believe that the discretion of a Trial Judge in denying to a defendant in a criminal case the right to waive a jury trial may not be motivated

---

* The Federal Rules of Criminal Procedure (rule 23, subd. [a]) import an element in addition to the consideration of the best interests of the defendant, for thereunder the waiver must be "with the approval of the court *and* the consent of the government". (Emphasis supplied.) This accounts for the holding in *Mason* v. *United States* (250 F. 2d 704) and the dictum in *Patton* v. *United States* (281 U. S. 276, 312).

** See the excellent discussion of this problem by Hall, Has the State a Right to Trial by Jury in Criminal Cases?, 18 A. B. A. J. 226.

primarily by concern for a tidy trial. It is no answer to refuse the request of a defendant to withdraw consideration of his case from the jury in a joint trial because it might "create a cumbersome proceeding". Such difficulties as may inhere in a joint trial to be decided in part by the court and in part by the jury, are minimal in contrast to the dominant importance of according to a criminal defendant a fair trial free of any taint of passion or prejudice. And, if needs be, the duplicative effort and court processes involved in a separate trial must likewise yield to these considerations. To prevent the use of the right to waive a jury as a device for delay or severance, the Trial Judge should take care that the record reflects the defendant's complete comprehension of the nature and consequences of his decision, to be available upon a possible subsequent application to withdraw the waiver.

In the most complex civil case, with many plaintiffs and third-party plaintiffs, defendants and third-party defendants, some may proceed to trial by jury and some may waive jury trial. The right so to waive is absolute (N. Y. Const., art. I, § 2; Civ. Prac. Act, § 426). The causes of action may be severed, or tried jointly, in the sound discretion of the Judge. There may be mutterings about the parties' motivations in such trial strategy, but by this time no one maintains responsibly that our Anglo-American juridical system cannot accommodate successfully and fairly to such a litigation situation. Surely the rights of a criminal defendant are not to be restricted by considerations of convenience which are daily overcome in civil litigation. Even if the trial court has the broad discretion that is accorded it in the majority opinion, it would in my opinion constitute an abuse of discretion to withhold approval on the ground that a nonjury trial "would have imposed an unwarranted burden upon the prosecutor and the court".

Certainly the resources of a criminal court in adapting to the inconvenience of a difficult and arduous trial or sequence of trials will be no less effective than those of a civil court. It is unthinkable that a court system reflecting a society so preoccupied with the rights of an accused would subordinate those rights to functional considerations.

The judgment of conviction should be reversed and a new trial ordered.

RABIN, VALENTE and BASTOW, JJ., concur with M. M. FRANK, J.; BOTEIN, P. J., dissents and votes to reverse and grant a new trial in opinion.

Judgment affirmed.