THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v AVERY WALLACE, Appellant.

Second Department, December 29, 1989

## APPEARANCES OF COUNSEL

*David Epstein* for appellant.

*Elizabeth Holtzman, District Attorney (Barbara D. Underwood, Michael Gore, Sherry B. Bokser* and *Jonathan D. Sands* of counsel), for respondent.

## OPINION OF THE COURT

RUBIN, J.

The defendant and two codefendants, Michael Davis and

James Fredericks, were charged with burglary in the third degree and related offenses arising from a burglary of Joe's Department Store, located at 1026 Manhattan Avenue, in Brooklyn, on September 13, 1985, at about 1:15 A.M. The defendants were apprehended by the police when they were discovered leaving the immediate vicinity of the crime in a red Renault automobile which contained stolen merchandise, bolt cutters, and a broken padlock used by the shopkeeper to secure the scissor gates in front of the burglarized store. At the close of a joint bench and jury trial, the Trial Justice found Fredericks not guilty of the charges and the jury rendered its verdict convicting the defendant and Davis of burglary in the third degree.

On this appeal, the principal issues are whether the court properly denied the defendant's motion for a severance and whether the novel procedure employed by the trial court in conducting a simultaneous bench and jury trial was unauthorized or so prejudicial as to have deprived the defendant of a fair trial. Additionally, the defendant contends that the trial court erroneously denied that branch of his omnibus motion which was to suppress physical evidence seized from the Renault and that the evidence adduced at trial was legally insufficient to establish his guilt.

█ The hearing court properly determined that the defendant's arrest was based on probable cause and that all evidence derived therefrom was admissible at trial. Contrary to the defendant's contention, the police conduct in this case was justified at its inception and as the officers gathered information during their encounter with the defendants, the escalating police responses were reasonably related in scope and intensity to the developing circumstances.

On September 13, 1985, at about 1:15 A.M., Police Officer Augoustatos and his partner were on routine patrol in a marked radio car, traveling southbound on Manhattan Avenue. As they approached the intersection of Manhattan Avenue and Freeman Street, Officer Augoustatos noticed a red Renault automobile parked, facing west, on Freeman Street. The Renault then "took off" and entered the intersection against a steady red traffic light. Simultaneously with the Renault's acceleration through the intersection, Officer Augoustatos heard an alarm ringing from the direction of Joe's Department Store. He also observed a blond woman pointing both in the direction of Joe's Department Store and at the Renault, while shouting "Steal, Steal". Without stopping the

radio car, Officer Augoustatos's partner drove after the Renault. Upon turning westbound onto Freeman Street, Officer Augoustatos saw a black male running alongside the Renault. This man "ducked out of sight" as the radio car passed through the intersection in pursuit of the Renault. After proceeding four blocks, the officers forced the driver of the Renault to pull the vehicle over to the side of the road. Based upon these observations, the police acted properly when they stopped the Renault to briefly detain the occupants for questioning. Not only did the officers have reasonable suspicion sufficient to stop the Renault for a traffic violation *(see, People v Boyce,* 121 AD2d 552; *People v Rosario,* 94 AD2d 329, 333), but they also had sufficient information to form a reasonable suspicion that the occupants had perpetrated a burglary of the department store *(see, People v Taylor,* 128 AD2d 653, 655; *People v Finlayson,* 76 AD2d 670, *lv denied* 51 NY2d 1011, *cert denied* 450 US 931). "The mere possibility that the occupants of the vehicle were not the actual perpetrators did not require [the officers] to simply shrug [their] shoulders and permit the car to proceed on its way unimpeded" *(People v Finlayson, supra,* at 677).

Once the vehicle was lawfully stopped, Officer Augoustatos shined his flashlight through the window into the car's interior and made the following observations: the defendant was in the driver's seat, the codefendant Davis was occupying the front passenger seat, and the codefendant Fredericks was seated in the rear. A wad of money and a cut padlock were on the passenger floor between Davis's feet, and a large cardboard box was on the back seat next to Fredericks. The officer also observed another large cardboard box protruding from the partially open trunk. Next to this box was a pair of bolt cutters. Officer Augoustatos's partner then radioed for another unit to investigate the vicinity where they had first observed the parked Renault. Within 2 to 3 minutes of the initial stop of the Renault, the officers received confirmation of a burglary at Joe's Department Store. The officers then placed the defendants under arrest and seized the physical evidence.

Clearly, Officer Augoustatos's use of a flashlight to illuminate the interior of the Renault did not constitute an unreasonable intrusion *(see, People v Cruz,* 34 NY2d 362, *amended* 35 NY2d 708; *People v Baldanza,* 138 AD2d 722; *People v Perez,* 135 AD2d 582). Furthermore, the officer's observation of bolt cutters, a broken padlock, and the apparent proceeds of a

burglary inside the vehicle, combined with the confirmatory information provided by his fellow officers that the department store had, in fact, been burglarized, elevated the officer's level of reasonable suspicion to probable cause to arrest the defendant and seize the contraband *(see, People v Taylor,* 128 AD2d 653, 654-655, *supra; People v Rivera,* 124 AD2d 682; *People v Springer,* 118 AD2d 606).

■ We also reject the defendant's contention that the evidence adduced at the trial was legally insufficient to establish his guilt of burglary. "The well-settled standard of proof in circumstantial evidence cases is that the facts from which the inference of defendant's guilt is drawn must be inconsistent with the defendant's innocence and must exclude to a moral certainty every other reasonable hypothesis" *(People v Giuliano,* 65 NY2d 766, 767-768). The prosecution met this standard *(see, e.g., People v Ayers,* 135 AD2d 825; *People v Martin,* 131 AD2d 884; *People v La Furno,* 104 AD2d 1008). At the trial, the defendant, through the testimony of the codefendant Fredericks and his wife, attempted to rebut the reasonable inference derived from the prosecution's evidence that he intentionally and knowingly assisted Davis in the commission of the burglary of Joe's Department Store. According to the defense witnesses, the defendant was playing cards at Fredericks's house when he received a telephone call from Davis at 12:30 A.M. After a brief telephone conversation with Davis, the defendant announced that he was going to borrow Davis's mother's car to pick Davis up. Shortly thereafter, the defendant returned with the car and Fredericks accompanied the defendant to the location where Davis was to be picked up. The defendant parked the car "a little ways" from the corner of Manhattan Avenue and Freeman Street and waited for Davis. After about three minutes, Davis appeared with an unidentified man; each was carrying a large cardboard box. Davis placed his box in the back seat of the car and hopped in the front seat, while his companion was placing the other box in the trunk. The defendant then drove off before Davis's companion could enter the car. The latter ran alongside the car until it reached the intersection, at which time Fredericks observed a police car approaching and heard a burglar alarm ringing. Based on this testimony, the trier of fact could readily reject the defendant's version that he was not a knowing participant, but reach a contrary conclusion with respect to codefendant Fredericks. Based upon our factual review power, we are satisfied that the evidence established the defendant's

guilt beyond a reasonable doubt and that the verdict was not against the weight of the evidence *(see,* CPL 470.15 [5]).

■ We also find no merit to the defendant's contention that the trial court improvidently exercised its discretion in denying his motion for a separate trial predicated upon his intention to call the codefendant Davis as a defense witness. Where proof against multiple defendants is supplied by the same evidence, only the most cogent reasons warrant a separate trial *(see, People v Ricardo B.,* 73 NY2d 228, 233), particularly when the complainant, as here, is elderly and in failing health. At no time did Davis or his attorney advise the court that Davis would testify on the defendant's behalf if a separate trial were granted. A court is not required to order separate trials where the possibility of the codefendant's testifying is merely colorable or speculative *(People v Bornholdt,* 33 NY2d 75, 87, *cert denied sub nom. Victory v New York,* 416 US 905). Moreover, the defendant failed to offer proof as to the substance of Davis's testimony and that his testimony would be exculpatory. Absent a proper showing of need for the codefendant Davis's testimony, the denial of the defendant's severance motion was not an improvident exercise of discretion *(People v Bornholdt, supra).* Since the defendant never moved to sever on the alternative grounds urged for the first time on appeal, his belated challenges to the court's ruling have not been preserved for appellate review *(see, People v Russell,* 71 NY2d 1016; *People v Bouyea,* 142 AD2d 757; *People v Johnson,* 124 AD2d 1063), and we decline to exercise our discretionary power to review them in the interest of justice.

■ Under the particular circumstances of this case, we are satisfied that the Trial Justice exercised his discretion within permissible legal limits when he ordered a joint bench and jury trial and that the procedure did not prejudice the defense. Similar to the use of multiple juries, a procedure recently approved by the Court of Appeals in *People v Ricardo B.* (73 NY2d 228, *supra),* there is no statute which expressly authorizes or prohibits a joint bench and jury trial *(see, People v Rowley,* 119 Misc 2d 86; *People v Imburgia,* 134 Misc 2d 1057). In rejecting the defendant's claim that the use of multiple juries was unauthorized, the Court of Appeals noted that "the Constitution permits the courts latitude to adopt procedures consistent with general practice as provided by statute" *(People v Ricardo B., supra,* at 232; NY Const, art VI, § 30; *see, Matter of A. G. Ship Maintenance Corp. v Lezak,* 69

NY2d 1, 5-6) and, "[i]n the interest of judicial economy [the Legislature] has granted the courts broad discretion to join a wide variety of charges and parties for prosecution if doing so does not jeopardize the rights of the defendants (CPL 200.20 and 200.40)" *(People v Ricardo B., supra,* at 232). Since courts may adopt new procedures which are fair and which facilitate the performance of their responsibilities *(see,* Judiciary Law § 2-b [3]), the Court of Appeals concluded that the power to employ multiple juries may logically be implied from the terms of the joinder statutes. That the procedure chosen to further the legislative purpose is novel does not render it improper, provided the method adopted is consistent with the general practice and procedure authorized by the Legislature and is in accord with the powers granted by the Constitution *(People v Ricardo B., supra,* at 233). The court's reasoning is equally applicable to the use of a joint bench and jury trial. It is noteworthy that the 1984 amendment to CPL 200.40 (1) in effect at the time of this trial (L 1984, ch 672, § 2) authorizes the court to order joinder or severance "or provide whatever other relief justice requires". The amendment arose from concerns of "unwarranted burdens on the criminal justice system and * * * unfair hardship on crime victims and other witnesses" *(see,* 1984 NY Legis Ann, at 238). Clearly, a joint bench and jury trial is a procedure implicitly authorized under the legislative grants of discretionary power to the courts over the joinder and severance of indictments.

In adopting the novel procedure of a simultaneous bench and jury trial (a partial form of severance), the trial court took into consideration the following factors. The People's evidence against the three defendants was the same and separate trials would create unfair hardship on the elderly complainant, whose health was failing. The codefendant Fredericks's waiver of his right to a jury trial was tendered in good faith and was not a stratagem to procure an otherwise impermissible procedural advantage, i.e., the granting of a separate trial *(see, e.g., People v Imburgia,* 134 Misc 2d 1057, *supra; cf., People v Firestone,* 111 AD2d 696; *People v Diaz,* 10 AD2d 80, *affd* 8 NY2d 1061; *People v Ahalt,* 139 Misc 2d 863). Additionally, Fredericks's counsel had advised the court that his client would be willing to testify for the defendant. The legal and factual issues were not complicated. The logistics of managing a simultaneous bench and jury trial were minimal in view of the fact the evidence pertaining solely to the codefendant Fredericks was limited and did not require fre-

quent removal of the jury. Furthermore, appropriate precautions could be taken to protect the defendant's due process rights. After weighing these factors, the court did not improvidently exercise its discretion in ordering a joint bench and jury trial.

Moreover, prior to commencing the trial, the court described the order of trial that would take place under such a procedure. Specifically, the court, in its preliminary charge, was to instruct the jury that they were to be the fact finders solely as to the defendant and Davis, who had exercised their right to a jury trial, while the court would decide the factual issues with respect to Fredericks, who had exercised his right to a bench trial *(see, People v Imburgia,* 134 Misc 2d 1057, *supra).* After the presentation of the People's case, the codefendant Fredericks would be permitted to testify in his behalf outside the presence of the jury. The court would then render its determination as to the guilt or innocence of Fredericks, without informing the jury of its verdict. Fredericks could then be called by the defendant to testify, eliminating risk against self-incrimination and, thus, obviating the need for separate trials. The court adhered to this order of trial and, after Fredericks testified for the defendant, the court complied with the defendant's request and permitted Fredericks to leave the courtroom outside the view of the jury. The Trial Justice then explained to the jury that he had already rendered his verdict as to Fredericks, Fredericks was "no longer part of this case" and the jurors were not to speculate as to what his verdict was concerning Fredericks.

Contrary to the defendant's contention, we do not find the use of a joint bench and jury trial inherently prejudicial. Other courts have expressed concern that a joint bench and jury trial would be cumbersome and could engender confusion and speculation among the jurors *(see, e.g., People v Diaz,* 10 AD2d 80, 92-93, *affd* 8 NY2d 1061, *supra; People v Rowley,* 119 Misc 2d 86). While these concerns may in some instances be realized, particularly in a very complicated and lengthy trial that requires the trial court to make numerous legal rulings as to the admissibility of evidence *(see, e.g., People v Firestone,* 111 AD2d 696, *supra; People v Ahalt,* 139 Misc 2d 863, *supra),* in this case no such difficulties were encountered. It bears repeating that the factual and legal issues in this case were not complex. A review of the record discloses that the trial court competently and fairly managed this simultaneous bench and jury trial, taking thorough precautions to protect

the defendant's due process rights. The defendant has failed to identify any specific prejudice to his case either at the trial, when he belatedly registered an objection to the procedure employed, or in his argument before this court. Accordingly, we reject his claim *(see, People v Ricardo B.,* 73 NY2d 228, 233, *supra).*

We have considered the defendant's remaining contentions and find them either to be unpreserved for our review or without merit. Accordingly, the judgment is affirmed.

LAWRENCE, J. P., BALLETTA and ROSENBLATT, JJ., concur.

Ordered that the judgment is affirmed.