THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
STEVEN CHESWICK, Appellant.

Second Department, May 20, 1991

**APPEARANCES OF COUNSEL**

*Francis G. Ganun* for appellant.

*John J. Santucci, District Attorney (John Castellano* of counsel), for respondent.

**OPINION OF THE COURT**

BRACKEN, J.

 In a joint trial, where one defendant is tried by the court, and another defendant is tried simultaneously by a jury, the trial court has no duty to record its verdict in secret prior to the jury's revelation of the verdict arrived at by it.

Therefore, in the present case, the failure of the trial court privately to record its verdict as to the defendant Cheswick, prior to its having learned of the jury's verdict with respect to his codefendants, does not constitute reversible error.

■ The defendant was tried together with two former New York City police officers, both of whom were convicted of several crimes, including assault in the second degree, based on evidence of their having mistreated a prisoner (see, People v MacCary, — AD2d — [decided herewith]; People v Pike, — AD2d — [decided herewith]). The evidence presented by the prosecution supports the Trial Judge's conclusion that the defendant, a police lieutenant who was present during the assault on the prisoner, inexcusably failed to restrain his subordinates, and that this failure constituted the crime of official misconduct (see, Penal Law §§ 195.00, 195.00 [2]; People v Kelly, 264 App Div 14).

■ The trial court did not exercise its discretion in an improvident manner when it denied the defendant's request for a separate trial. Considering that the proof of the defendant's guilt was furnished by essentially the same evidence as that which proved the guilt of the codefendants, " 'only the most cogent reasons [would] warrant a severance' " (People v Mahboubian, 74 NY2d 174, 183, quoting People v Bornholdt, 33 NY2d 75, 87, cert denied sub nom. Victory v New York, 416 US 905). We agree with the trial court that no such "cogent reasons" were demonstrated in this case.

That the defendant chose to be tried by the court, while his codefendants exercised their right to a trial by jury, did not in and of itself require the granting of a separate trial. Instead, the trial court properly exercised its discretion in conducting a jury trial and a "bench" trial simultaneously (see, People v Wallace, 153 AD2d 59; see also, People v Ricardo B., 73 NY2d 228). In the Wallace case, this court noted that although nothing in the CPL expressly authorized "a joint bench and jury trial" (People v Wallace, supra, at 64), such trials could nonetheless be conducted, "provided the method adopted is consistent with the general practice and procedure authorized by the Legislature and is in accord with the powers granted by the Constitution" (People v Wallace, supra, at 65, citing People v Ricardo B., supra, at 233). Contrary to the defendant's arguments, we find that the present trial was conducted in full accordance with the "practice and procedure" authorized by law.

The defendant argues that the trial court erred when it failed to record its verdict until after the verdict of the jury with respect to the codefendants had already been pronounced. Having failed to register any objection at that point in the proceedings when the court advised the parties of its intention to withhold its decision until the jury had reached its verdict, the defendant now accurately describes his argument in this respect as one made "in retrospect". It is only "in retrospect" that the defendant now contends that by failing to record its verdict prior to learning of the substance of the jury's verdict, the court created the " 'appearance' that [it] was influenced by the jury's deliberation".

■ The People are without any question correct in asserting that under these circumstances, the defendant's argument has not been preserved for appellate review as a matter of law. If the defendant had asked the court to record its verdict before the jury had returned, the "error" of which the defendant now complains might not have occurred. Since no objection was made until it was too late for the trial court to cure the alleged error, appellate review as a matter of law is foreclosed (see, CPL 470.05 [2]; *People v Udzinski,* 146 AD2d 245).

We do not agree with the suggestion made by our dissenting colleagues that the defendant's claim in this respect is reviewable as a question of law, even in the absence of an objection sufficient to alert the trial court to the substance of the defendant's argument. The categories of those trial errors which warrant review as a matter of law on appeal, even though the trial court was itself never given a fair opportunity to cure the error in question, are extremely limited, and should not be expanded. Even assuming that the trial court's failure to record its verdict in anticipation of the announcement of the jury's verdict constituted error, it cannot fairly be described as one which is so fundamental as to warrant review as a question of law in the absence of a timely objection (see generally, *People v Udzinski, supra,* at 251).

■ Our dissenting colleagues assert that the defendant's claim has merit, and that the court did in fact err when it failed to record its verdict prior to the return of the jury. No statute, no provision of the New York State Constitution, and no binding precedent can be cited in support of this proposition, which seems instead to rest upon the acceptance of the view that, as a general matter of policy, Judges who preside over joint bench and jury trials should record their verdicts

before learning of the result reached by the jury, in order to avoid any appearance of impropriety.

While such an approach may be wise as a matter of general policy, it is not required by law. It is axiomatic that "a Judge —unlike a jury—by reasons of his learning, experience, and judicial discipline, is uniquely capable of distinguishing the issues and of making an objective determination" *(People v Brown,* 24 NY2d 168, 172). In recognition of the fundamental trust which is placed in the integrity of the trial court, it has been held, for example, that a Judge may preside over a nonjury trial even after having decided a pretrial *Sandoval* motion *(see, People v Montpeirous,* 133 AD2d 709; *People v Lombardi,* 76 AD2d 891; *see also, People v Latella,* 112 AD2d 324). It has also been held, by way of another example, that "[a] Judge, who during pretrial adjudication acquires information inadmissible before the fact finder of guilt or innocence, is not legally disqualified from conducting a bench trial" *(see, People v Moreno,* 70 NY2d 403, 404).

In sum, "[a] Trial Judge is presumed to have considered only the legally competent evidence adduced at the trial" *(People v Harris,* 133 AD2d 649, 650-651, citing *People v Brown, supra; People v McKinley,* 124 AD2d 752; *People v Lombardi, supra).* Giving effect to this presumption in the present case, we reject the contention that the trial court's verdict as to the defendant Cheswick might actually have been influenced by its knowledge of the jury's verdict with respect to the codefendants. That some observers might *speculate* that the trial court was influenced in this way is insufficient to warrant a new trial, either as a matter of law, or in the interest of justice.

Upon our review of the issue in the interest of justice, we therefore conclude that the defendant's argument with respect to the timing of the trial court's verdict is meritless. The defendant's remaining contentions are equally without merit. Thus, the judgment appealed from is affirmed.

O'BRIEN, J. (dissenting). I agree with my colleagues that the Trial Judge properly exercised his discretion in denying the defendant's motion for a separate trial and in conducting a joint bench and jury trial. However, as in a joint trial with multiple juries, such a procedure should be used only after thorough precautions have been taken to protect the defendant's due process rights *(see, People v Wallace,* 153 AD2d 59; *see also, People v Ricardo B.,* 73 NY2d 228). I find that the

procedure employed by the Trial Justice, in which he waited to announce his verdict on the charges against the defendant until after hearing the jury's verdict on the charges against the codefendants, deprived the defendant of a fair trial.

After argument on the defendant's motion to dismiss for legal insufficiency at the close of the entire case, the Trial Judge stated "I will announce my decisions at the end of the jury deliberation process". There is no indication in the record that the manner in which the verdicts were to be announced had been discussed. I do not agree with my colleagues' position that it was the defense counsel's burden to object at this point and to request that the court record its verdict separately. The defense counsel was justified in inferring that the Trial Judge would deliver a verdict independently of the jury's verdict. The failure to object to the Trial Judge's delay in reporting his own verdict while the jury deliberated for the next two days is understandable, since such an objection might have antagonized the court (cf., People v Hryn, 144 AD2d 961). When the jury indicated that it had reached a verdict, it was not incumbent upon the defense counsel to remind the Trial Judge that he had a duty to render a separate and independent verdict.

In any event, the defense counsel's failure to object to the Trial Judge's delay in rendering his verdict until after the jury announced its verdict does not preclude appellate review. This court has stated "the most basic components of a fair trial—a fair Judge, a fair jury, and a court of competent jurisdiction—are generally held to be so important that the defendant cannot, through application of the preservation doctrine on appeal, forfeit his right to object to their absence" (People v Udzinski, 146 AD2d 245, 252). I find that the procedure employed here deprived the defendant of his fundamental right to a fair trial. Furthermore, the Court of Appeals has recognized that certain errors " 'that would affect the organization of the court or the mode of proceedings prescribed by law' " need not be preserved for review as a matter of law (People v Ahmed, 66 NY2d 307, 310, quoting People v Patterson, 39 NY2d 288, 295, affd 432 US 197). Certainly the method by which verdicts are rendered in a joint bench and jury trial falls within that category.

Where the Trial Judge acts as the finder of fact as to one defendant at a trial of several defendants, one or more of whom are tried before a jury, a procedure must be employed to ensure that his/her deliberations are not consciously or

subconsciously influenced by the deliberations and verdict of the jury. As a practical matter, in most cases, a Trial Judge sitting as the trier of fact should be able to render a verdict in a matter of a few hours (cf., People v O'Brien, 86 Misc 2d 139). Here, there were no complicated issues of law or fact to be resolved. At the close of the People's case, the Trial Judge dismissed all the counts of the indictment against the defendant except the charge of official misconduct. The Trial Judge should have promptly recorded his verdict, taking adequate precautions to prevent the deliberating jury from learning of his determination. The Trial Judge had previously instructed the jurors that he would render a determination as to the guilt or innocence of the defendant and that they were not to draw any unfavorable inferences against the codefendants from this procedure (see, e.g., People v Wallace, 153 AD2d 59, supra). In the unlikely event that the jury had reached a verdict first, the Trial Judge could have delayed taking the jury's verdict as to the codefendants until recording his verdict as to the defendant. In approving the use of multiple juries in People v Ricardo B. (73 NY2d 228, supra), the Court of Appeals noted that the juries had deliberated separately and neither was permitted to report a verdict until both had concluded deliberations. The procedure employed here failed to ensure that the Trial Judge's verdict was the product of independent deliberations which had been concluded prior to the jury rendering a verdict.

As my colleagues point out, a Trial Judge is generally presumed capable of making an objective determination based on the appropriate legal criteria, despite an awareness of other facts which should not be relied upon in reaching a decision (see, People v Moreno, 70 NY2d 403) and is presumed to have considered only competent evidence in reaching a verdict (see, People v Robinson, 143 AD2d 376). Nevertheless, I do not find that the invocation of the general rule is sufficient to outweigh the prejudice which is inherent in the procedure employed in this case. The possibility that the jury's verdict could either consciously or subconsciously influence the Trial Judge's verdict is particularly evident from the facts of this case. The jury found the three codefendants guilty of various charges in connection with the mistreatment of a prisoner. The charge of official misconduct against the defendant was based on his alleged failure to protect this same prisoner from the actions of his codefendants.

Therefore, I vote to reverse the defendant's judgment of conviction, on the law, and to order a new trial.

THOMPSON, J. P., and KUNZEMAN, J., concur with BRACKEN, J.; EIBER and O'BRIEN, JJ., dissent in an opinion by O'BRIEN, J.

Ordered that the judgment is affirmed.